MARJORIE KELLER *vs.* JOHN B. BANKS.

EARL KELLER *vs.* JOHN B. BANKS.

BESSIE KELLER *vs.* JOHN B. BANKS.

ELWOOD KELLER *vs.* JOHN B. BANKS.

MURIEL KELLER *vs.* JOHN B. BANKS.

EARL KELLER *vs.* JOHN B. BANKS.

Kennebec.      Opinion October 28, 1931.

*Ralph W. Ferris,*
*Francis H. Bate,* for plaintiffs.
*McLean, Fogg and Southard,* for the defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

THAXTER, J.    Elwood Keller, the plaintiff in one of the above
actions, was the owner of a Model T Ford Sedan, which on the
twenty-seventh day of August, 1930, was being driven by his wife,
Bessie Keller, on the state highway between Augusta and Man-
chester in the direction of Manchester. At the intersection of the
so-called Pelton Hill Road with the main highway, while the driver
of the Ford was attempting to cross to enter the Pelton Hill Road,
a collision took place with a car owned and driven by the defend-
ant. Six actions have been brought as a result of such accident
which have been tried together, and after a verdict for the plain-
tiff in each case are before this court on general motions for new
trials and on exceptions. One action is brought by Bessie Keller to
recover for personal injuries, another by Elwood Keller, her hus-
band, to recover for damages to his car and for medical expenses
incurred in the treatment of his wife's injuries and for loss of her
services, another is brought by Muriel Keller, a passenger, to re-
cover for personal injuries, another by her four year old daughter,
Marjorie, and the remaining two by Earl Keller to recover for ex-
penses of medical treatment and loss of services of his wife Muriel
and for the expense of treatment of his daughter.

At the scene of the accident the main highway from Augusta
made a sharp turn to the right. On the right-hand side there were
bushes and trees which obscured the view of the highway in both
directions. The Pelton Hill Road intersected the main road at the
curve and continued from it in practically a straight line. A trav-
eler proceeding from Augusta in going over the Pelton Hill Road
would, therefore, continue on practically a straight course, where-
as, if he continued on the main road, he would turn sharply to the
right. The driver of the Ford was coming from Augusta on the
main highway with the intention of entering the Pelton Hill Road.
As she approached the intersection she slowed her car till it almost
stopped, at which point, according to her own testimony, she had
a clear view around the turn in the direction of Manchester of but
thirty-five feet. She then started ahead in low gear and her front
wheels had crossed the hard surface of the main road and were on

the gravel part of the other way, when the Ford was struck just in front of the rear wheels by the defendant's car coming from Manchester on the main road and pushed for some twenty feet into the ditch on the further side of the Pelton Hill Road. In his argument on the motions the defendant's counsel contends that there was no negligence on the part of the defendant, and that there was a failure to exercise due care by the driver and by the occupants of the Ford. We shall consider first the motions and these contentions in their order.

The defendant was driving a Studebaker car equipped with four wheel brakes, but these brakes had been disconnected from the front wheels thereby lengthening to some extent the distance within which he could stop. He was approaching a turn which he concedes was dangerous, and he knew that cars from the opposite direction on the main highway intending to enter the Pelton Hill Road would have to cross in front of him to accomplish their purpose. The degree of care which he owed was measured by the dangers which faced him. According to his own testimony as he approached the curve he was traveling between forty and forty-five miles an hour; he then slowed down, until as he claims he could see down the road beyond the turn toward Augusta, when he increased his speed to twenty or twenty-five miles an hour. The Ford, he says, suddenly appeared on his left and attempted to cross the main highway in his path. If at this time he had the view which he claims to have had down the road, there is no good reason why he could not have seen the other car. The testimony by the occupants of the plaintiff's car as to the defendant's speed is vague and unsatisfactory. There is evidence, however, that for a distance of thirty-six feet before the impact the wheels of the defendant's car were locked and dragged over the highway the surface of which was clean and dry, and that then the defendant's car was moving sufficiently fast to push the plaintiff's car more than twenty feet into the ditch. On such evidence the jury were warranted in finding that the defendant did not approach this particularly dangerous spot in a prudent manner and that he was negligent. The mere fact that the Ford car was on his left and that he had the technical right of way does not relieve him from liability. It has been well said by this

court that a "right of way is not absolute" and that "the supreme rule of the road is the rule of mutual forbearance." *Fitts* v. *Marquis*, 127 Me., 75, 77.

The plaintiffs have the burden of establishing their own due care. The testimony of Bessie Keller herself indicates that she was not in the exercise of due care. The place of the collision was a blind turn over which there was a heavy traffic. She states that she slowed her car, and made her observation for cars approaching from the opposite direction at a point where she could see around the turn but thirty-five feet. According to the testimony of Mr. Hovey and of Mr. Hunt and of highway officers, Marks and Fowler, it was practical for Mrs. Keller, before turning across the path of approaching traffic, to have continued on till a reasonable view of the highway toward Manchester could have been obtained. Her testimony that this could not have been done is refuted by the photographs and by the plans, as well as by the evidence of these impartial witnesses. She admits that she had traveled over this intersection many, many times and was thoroughly acquainted with it, and there is no reasonable excuse for her not having followed that course which was apparent and obviously the only prudent one to have taken. Instead of so doing, she started diagonally across the road at a point where her view was obscured. Had she used reasonable care she could have seen for a considerable distance the defendant's oncoming car. We can reach no other conclusion than that her negligence was a contributing cause of the accident. In her case the motion for a new trial must be sustained. Her husband sues for medical expenses, loss of consortium, and damages to his car. The verdict in his favor in so far as it covers damages to his car can perhaps be justified. We are unable to determine, however, what part of the gross amount awarded him represents this item and the motion for a new trial in his case must be sustained.

In the remaining four cases recovery is sought for injuries to passengers. Counsel for the defendant contends that they likewise failed to exercise due care. The negligence which bars the recovery of the driver of the automobile was a negligent operation of the car. It was not so much the failure to look for approaching vehicles, as it was crossing the highway at a point where she could not

see. Passengers are not expected to assume control over the operation of automobiles. *Danski* v. *Kotimaki*, 125 Me., 72. The responsibility for operation rests on the driver, and constant suggestion as to the details of management of the car often does more harm than good. There is a duty to warn of known and apparent dangers, but the evidence indicates that the passengers in the Ford car could not have done anything to have avoided this accident. The motions for new trials in the cases involving their injuries must be denied. We come now to a consideration of the defendant's exceptions.

*First Exception*

The Court, in accordance with the provisions of Sec. 16, Chap. 327, P. L. 1929, instructed the jury in effect that within fifty feet of the approach of intersecting ways where the view is obstructed a speed in excess of fifteen miles an hour is *prima facie* unlawful. The statutory definition of what constitutes an obstructed view was properly given. The presiding Justice further explained to the jury that an unlawful speed was *prima facie* evidence of negligence. The defendant's counsel than requested the Court to instruct the jury that the defendant's view of the Pelton Hill Road had no bearing on this case. The Ford car was not on the Pelton Hill Road; and the defendant, therefore, claims that the only obstruction which was material was that on his left, which would have hidden the plaintiff's car from him as it approached the intersection. The Court refused to so instruct but in effect told the jury that if the way was obstructed as defined by the statute, the defendant should have driven at not exceeding the statutory rate or the burden of explanation would be on him. The defendant excepted to the refusal to give the requested instruction, to the modification of it as given, and to the instruction as given with reference to the rate of speed at intersecting ways. The requested instruction was properly refused. The plaintiffs had the right to assume until the contrary appeared that automobiles approaching that spot would be operated in accordance with the laws of the state. *Sturtevant* v. *Ouellette*, 126 Me., 558; *Day* v. *Cunningham*, 125 Me., 328; *Marden* v. *Portsmouth, Kittery & York Street Railway*, 100 Me., 41.

It is of course true that what might have been actionable negligence with respect to cars approaching from one side of the intersection might not have been with respect to cars approaching from the other. The instruction as given can not be construed as a denial of such doctrine, particularly when the presiding Justice took pains to inform the jury that not only must the plaintiff prove the defendant's negligence, but also that such negligence was the proximate cause of the accident.

The defendant claims that the charge as given with respect to the rate of speed at this intersection was erroneous for two reasons. He contends that the highway at the point of the accident had been designated as a through way, and that the provisions of Chap. 172, P. L. 1929 providing for the designation of through ways modify the provisions of Sec. 16, Chap. 327 relating to speed. Secondly, he claims that the charge ignores the fact that Mrs. Bessie Keller knew that cars traversed the intersection at a rate of speed in excess of fifteen miles an hour. The provisions of Chap. 172 do not modify the requirements in regard to speed. They merely relate to the right of way at intersections of a designated through way. In answer to the second contention it is perhaps sufficient to say that the knowledge of the occupants of the Ford car that other cars approaching the intersection exceeded the statutory speed can have no relevance in determining whether or not the drivers of such other cars were negligent. Its only effect, if material at all, would be to indicate the degree of care required of the plaintiffs.

*Second, Third and Fifth Exceptions*

These exceptions are to portions of the judge's charge wherein he sets forth the duty owed by Mrs. Keller, the driver of the Ford. They relate to her contributory negligence. As the motion for a new trial in her case is sustained on the ground of her contributory negligence, it is unnecessary to consider these exceptions.

*Fourth Exception*

The defendant requested the following instruction:

"After Mr. Banks passed that point in the curve of the road where the curve no longer obscured his vision he had a right

to operate his car at any rate of speed reasonable and proper on an open through way and was not bound to anticipate that one approaching from the opposite direction would cut across the white traffic line in front of him without suitable and sufficient warning."

The Court, in refusing to give the instruction, told the jury in effect that the obligation of the defendant was to use due care. To the refusal to instruct and to the instruction as given the defendant excepted. The refusal was proper and the instruction as given entirely correct. What constituted due care under the particular circumstances was a question of fact for the jury.

*Sixth Exception*

The defendant requested an instruction the purport of which was that in determining what was a reasonable and safe rate of speed at the intersection the jury might take into consideration the fact that this was a through way permitting an accelerated speed beyond the fifteen miles an hour prescribed by the statute, and that the white traffic line gave assurance that no one would be on the defendant's right-hand side of the line without taking reasonable precaution against oncoming traffic. The instruction was refused and properly so. It is unnecessary to repeat the discussion on this point which was given in considering the first exception. The language of the presiding Justice in commenting on the requested instruction is a correct statement of the law.

*Seventh Exception*

The defendant excepted to the refusal of the Court to give the following instruction:

"The fact that the curve where the accident happened was known to Mrs. Muriel Keller to be a dangerous curve, and the fact that she without warning or protest permitted herself to be driven to the left of the white line marking the center of the highway at a time when she admits she could not see around the turn, renders her guilty of such contributing negligence as will bar her recovery, if the crossing of the white line at that point in any way contributed to the accident."

The Court told the jury that the fact assumed in the requested charge was for them to determine, and repeated the correct rule given in the main charge defining the obligations of a passenger. The remarks of the Court and the refusal to give the instruction as asked for were correct. The failure to warn the driver or to protest at her management of the car can not be held to be negligence as a matter of law.

### Eighth Exception

With reference to the duty of the passenger the presiding Justice charged the jury that she must use the ordinary care that a passenger or guest would use, and said in effect that such duty was fulfilled, if she gave warning of such dangers as were apparent to her and which might not be known or apprehended by the driver of the car. Counsel excepted to this portion of the charge, because as he says the meaning of it is that, if the driver knew the danger, the guest is relieved from all responsibility. We do not place such a construction on it. The court quite evidently by the use of the word "warning" meant the pointing out of a danger rather than a protest against the manner of driving. So construed the charge is a correct statement of law. A passenger is not required to warn the driver of every apparent danger. He has the right to assume that the person in control of the automobile is himself observing the ordinary dangers in his path. The purpose of a warning is to apprise the driver of that which he does not know. The case of *Peasley* v. *White*, 129 Me., 450, cited by counsel for the defense is entirely consistent with this principal. The apparent danger there referred to is a danger apparent to the guest. A warning broadly speaking may mean not only a pointing out of danger but a protest against incurring it. So defined the important consideration is whether it would have influenced the action of the driver. *Minnich* v. *Easton Transit Co.*, 267 Pa., 200; *Peasley* v. *White*, supra.

### Ninth Exception

The defendant excepted to the admission of certain testimony relating to the disconnecting of the brakes from the front wheels of the car. We can see no valid ground for the objection. The con-

dition of the brakes may not have indicated negligence, but it may well have been a material factor in determining the distance within which the car could have been stopped, and the degree of care which the defendant under such circumstances should have exercised.

*Exceptions overruled in each case.*
*Motions sustained in the cases of*
*Bessie Keller and Elwood Keller.*
*Motions overruled in all other cases.*