NANCY IRISH
*vs.*
NORMAN CLARK ET AL.
\* \* \*
MARION P. DUNN
*vs.*
NORMAN CLARK ET AL.
(Two cases)

Kennebec. Opinion, August 22, 1953.

*John G. Marshall,* for plaintiff.

*William B. Mahoney,*
*James R. Desmond,*
*Francis C. Rocheleau,*
*Saul H. Sheriff,* for defendant Clark.
*Locke, Campbell, Reid and Hebert,*

for defendant Milton.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J.

WILLIAMSON, J.   These two actions, before us on exceptions to the direction of verdicts for both defendants, arise from a collision between an automobile driven by the defendant Clark in which the plaintiff Nancy Irish was a passenger and an automobile driven by the defendant Milton. The defendants are charged with liability as "joint tort feasors," within the common use of the term, for concurring

acts of negligence. Nancy Irish, a minor, seeks to recover damages for personal injuries, and Marion P. Dunn, who has custody of Nancy, for medical and other expenses not included in the latter's suit.

The sole issue—identical in both cases—is whether there was evidence of due care on the part of Nancy Irish which would warrant submitting the cases to the jury. The evidence was clearly sufficient to go to the jury on the other issues; namely, negligence of both defendants, damages, and due care of plaintiff Marion P. Dunn. Indeed there is no dispute on this score, except with reference to defendant Milton's negligence. For convenience we will discuss only the case in which Nancy Irish is the plaintiff.

The facts which a jury could reasonably find may be briefly summarized. The cars collided at the intersection of the Blue Road, or Curtis Corner Road, so-called, and Route No. 202, the main or through highway from Winthrop to Lewiston, about 10:15 o'clock on the evening of March 16, 1952. The Milton car was proceeding westerly on the main highway at a speed of forty-five miles per hour and the Clark car was travelling southerly on the Blue Road, on which there was a "stop sign." Neither driver saw the other until it was too late to avoid the collision. To use the words of defendant Milton: "As I approached this intersection a car (the Clark car) shot out from behind the snow bank, and there was not time to do anything. It was about a car or two cars' length in front of me, and I just hit it."

There were four young people in the Clark car. In the front seat were defendant Clark and Carol Barber, and in the rear seat the plaintiff Nancy Irish, aged 16, and Lawrence Lord. Carol testified that at some point on the way home from Lewiston to North Monmouth Nancy and Lawrence changed from the front to the rear seat. She remembered nothing of the details of the accident. Neither Nancy, nor Lawrence Lord, nor the defendant Clark took the stand.

There is no dispute about the controlling legal principles. The plaintiff has the burden of affirmatively proving her due care or freedom from contributory negligence. The issue is to be decided by the jury if, but only if, the evidence with the inferences reasonably drawn therefrom taken in the light most favorable to the plaintiff warrant such a finding. The jury must base its conclusions upon facts found, not upon guess, conjecture or surmise. *Feely* v. *Morton,* 149 Me. 119; *Spang* v. *Cote, et al.,* 144 Me. 338, 68 A. (2nd) 823.

The argument of the defendants is this: that there is no evidence of what Nancy was doing from the time she sat on the rear seat until the collision; that it would be a guess, and no more, to find either negligence or due care on her part; and that therefore she has not sustained the burden of proving the essential fact, and so the verdicts were properly directed.

Three types of possible negligent conduct on Nancy's part are suggested: (1) failure to warn of impending danger; (2) physical interference with the driver; and (3) directions to the driver as to his speed or course.

The record contains evidence from which a jury could find that no warning by Nancy could have averted the accident. Reasonable persons could conclude under all of the circumstances that there was no lack of due care on Nancy's part in failing to see the Milton car in time to give an effective warning. Nancy was not the driver. It was not her duty as a passenger to undertake the direction of the car. A jury could well find that she failed in no duty to act affirmatively. *Nadeau* v. *Perkins,* 135 Me. 215, 193 A. 877; *Keller* v. *Banks,* 130 Me. 397, 156 A. 817; *Peasley* v. *White,* 129 Me. 450, 152 A. 530.

We come to the second and third types of suggested negligent conduct. They are, it will be noted, acts from which

a passenger or guest must refrain. It was stated in argument that had there been evidence that Nancy was asleep on the back seat, for example, the cases should have gone to the jury. It is the failure to account for Nancy's non-interference which the defendants say is fatal to her case at this stage.

On this point we need consider certain evidence applicable against Clark, but not against Milton. Both Clark and Milton talked with Officer Robinson of the State Police who investigated the accident shortly after it happened. The Officer said:

> "A.   He (Clark) said he came out onto the road, saw the stop sign and the other car at about the same time, that he increased his speed, trying to clear the other car.
>
> Q.   Do you recall the expression that he made?
>
> A.   He said he gunned it."

The statement of Clark, who did not take the stand, is evidence in the case against him. It has no bearing upon the case against Milton. Although Clark and Milton may be called "joint tort feasors," this characterization in the situation here existing carries no implication of a joint undertaking. The principles are well set forth by Chief Justice Dunn in *Arnst* v. *Estes and Harper*, 136 Me. 272, 8 A. (2nd) 201. The important feature of Clark's statement to the officer is that he does not indicate the slightest interference on the part of Nancy. His statement is valuable evidence no less for what he did not say than for what he did say. A jury could well have considered that a young man giving a statement of how a serious accident happened shortly after its occurrence, would mention interference with the operation of the car if such was the fact.

The defendant Clark cannot well complain that Nancy's counsel did not place him on the stand. His story was before the jury through the statement of the officer.

In the case against defendant Milton the statement of Clark to the officer is not available as evidence for Nancy or for Milton. The second and third types of possible interference and possible negligent conduct on Nancy's part are, therefore, to be considered without the benefit of Clark's statement.

We must look at life as it exists. Certainty is rarely found. Our pace would be slow indeed if we did not, in weighing probabilities, act before certainty was assured. In the administration of criminal law we guard the respondent with proof of guilt beyond a reasonable doubt. In civil actions the rule is less exacting. A fact is established by the preponderance of the evidence, by the tilt of the scales, to use the illustration presented to juries day after day by trial judges.

Here we have four young people driving home from Lewiston to North Monmouth. We find, as we would expect, a boy and girl in front, and a boy and girl in the rear. What possible reason would the girl on the rear seat have to interfere with the driver by direct physical action? Of course there are a thousand and one acts which a passenger in the rear seat of an automobile may do to interfere with the control of the car. There are countless possibilities of action which, if proven, would show that there was no negligence on the part of the driver. But human experience is such that we may safely act in the belief that a person in the rear seat of an automobile will stay there a reasonable length of time and will not physically interfere with the driving of the car. Circumstances will govern the finding by a jury. For example, young children in the rear of a car may present a different problem and a different set of probabilities with reference to the conduct of the driver.

It is also argued that Nancy may have been negligent in directing the driver as to his speed or course. We are not discussing warning of impending danger of collision, but

improper direction prior to the moment the Clark car emerged from the cross road into the highway. In Clark's statement to the officer there is an indication that he was not familiar with the road and that his course was directed by one of the girls.

The defendant Milton, in our view, insists unduly upon the denial of possibilities. There is nothing in the evidence to indicate that either the side road or the main highway presented peculiar problems to a driver. He could observe the road, could see the stop sign on the Blue Road, and use his own judgment upon speed and manner of driving. Let us suppose Nancy told Clark the way home was by the Blue Road and Route No. 202. Such a direction of route by a passenger, taken alone, surely does not amount to the control of or an attempt to control the immediate operation of the car. In the absence of other evidence we are of the view that the jury could find that Nancy in no way interfered with Clark's control of the car.

The record is not so complete as one would wish. Counsel argued that Nancy could not testify due to her condition. The record, while filled with evidence of her serious personal injuries, does not include evidence that she was unable to take the stand. The defendants also urge that the plaintiff should have called Lawrence Lord and Norman Clark as witnesses to tell more of what happened in the car.

Our problem, however, does not reach beyond the necessity of determining whether the evidence was sufficient to warrant submission to a jury and thus a favorable finding. Our concern is not whether a jury must find for the plaintiff on the issue of due care, or whether they ought so to find, but whether they could as reasonable men and women so find.

The record, from our examination, discloses a situation from which such men and women could infer and find that

Nancy was in the exercise of due care. Stated differently, a finding to this effect would not be the product of unreasonable minds. In reaching such a conclusion jurors will waste little time in eliminating fanciful possibilities. They will consider probabilities, and they will not insist that proof be required beyond the proof which they themselves demand in determining the facts in important matters affecting their own lives.

The jury is insulated by rules of evidence from hearsay and certain other types of evidence. No successful attempt has been made, however, to insulate the jury from the sound judgment, experience, and good common sense which they bring to the administration of justice.

We do not say that a jury would have found for the plaintiff in each case. We do say, however, that on this record a jury verdict for the plaintiff in each case against both defendants would have been justified. The plaintiffs were entitled to go to the jury. The entry will be in each case

*Exceptions sustained.*