BYRON HILL *vs*. JOSEPH JANSON.

York.   Opinion, March 19, 1943.

*Joseph E. Harvey,*

*Willard & Willard,* for the plaintiff.

*Louis B. Lausier,*

*William P. Donahue,* for the defendant.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J.    Action for damages arising from an automobile collision. Verdict for the plaintiff for $970. The case comes up on defendant's motion for new trial and on exceptions to refusal of presiding Justice to give an instruction to the jury requested by the defendant. The accident occurred in the town of Dayton on July 24, 1941, on the northerly side of highway designated as Route #5 and near its intersection with a gravel road known as the Gordon road. Route #5 is a black surfaced tarvia road 21 feet wide running approximately east and west, from Waterboro to Saco. The Gordon road is of gravel, approximately 14 feet wide, and converges into Route #5 from a southeasterly direction. The lower or southerly line of the Gordon road approaches Route #5 on a long slant at an angle

of approximately 45 degrees. The upper or northerly side of the Gordon road, however, is snubbed off short at approximately a right angle. The area thus created forms a long triangle which merges into Route #5 and is all of tarvia surface. There is a stop sign on the southerly side of the Gordon road near the base of the triangle. This sign is 152 feet from the point where the southerly line of Gordon road actually reaches Route #5. The plaintiff, following the natural course of travel, would reach the projected lower or southerly side of Route #5 in a distance of about 90 feet. He testified that he stopped at the stop sign, looked in a westerly direction and saw no car approaching. He then proceeded in low gear to the projected side line of Route #5, when he saw the defendant's truck traveling easterly and at a point which, measured on the plan (an exhibit in the case), was then 160 feet away. He continued across to the northerly side of Route #5 and was in his right hand lane when the truck of the defendant, loaded with two tons of ice, crossed diagonally in front of him and collided, twisting both front fenders and headlights to the right and sheering off the front bumper of his car. The truck then continued onto the lawn of adjoining property, cutting deep furrows therein. Marks on the road showed that the brakes of the defendant's truck were applied with force over a stretch of 65 feet. The damage to the truck, as shown by a photographic exhibit, was to the right front fender and wheel, which were practically demolished.

The defendant concedes that his servant, then engaged on his business, was guilty of negligence. He contends, however, that the plaintiff was guilty of contributory negligence as a matter of law.

It was shown that, from the stop sign where the plaintiff halted, there was a clear view westerly for at least 600 feet, and it is contended that, when the plaintiff arrived at the actual intersection of the two roads, and admittedly saw the defendant's truck, he should have waited and allowed it to pass. According to credible testimony, however, the truck was

then 160 feet from him, and he had but to cross to the right side of a comparatively narrow highway.

It was a jury question as to whether the plaintiff had reasonable opportunity to pass without peril or danger to either traveler, and assuming the exercise of reasonable care on the part of the other. The distance of the approaching vehicle from the intersecting point, and its speed are among the elements for consideration. A driver is not compelled to wait for a vehicle too far away to reach the intersection until he has crossed. *Petersen* v. *Flaherty*, 128 Me., 261, 147 A., 39; *Gold* v. *Portland Lumber Corp.*, 137 Me., 143, 16 A. (2d), 111; *Richards* v. *Neault*, 126 Me., 17, 135 A., 524. Here evidence for the plaintiff is that the defendant's servant, confronted by no emergency, and without reasonable cause, diverted his course and ran into the plaintiff's car after it had crossed the intersection and was on its own right of way.

The defendant invokes, as applicable, the familiar rule stated in *Rouse* v. *Scott*, 132 Me., 22, 164 A., 872; *Gregware* v. *Poliquin*, 135 Me., 139, 190 A., 181; *Banks* v. *Adams*, 135 Me., 270, 195 A., 206, that an automobile driver is required to be on the lookout and to see an apparent danger. On the record, however, the jury would be justified in finding there was no apparent danger.

Some stress is also laid upon the proposition that there was a variance between the pleading and proof, that the plaintiff's case was presented upon the theory that the collision was head on, and that the exhibits negative that assumption. It does appear that the declaration originally alleged a head on collision, but the record shows that the declaration was amended, with approval of the Court, by eliminating that allegation. No exception thereto was perfected, and the point is without significance on any ground.

The verdict, reflecting the conclusion of the jury that the plaintiff was not guilty of contributory negligence, this being the defendant's only contention, was justified and the motion for a new trial cannot be sustained.

The defendant, however, claims that he was aggrieved because the presiding Justice in his charge to the jury gave only the statutory law of the road as to drivers at ordinary street intersections, in accordance with R. S., c. 29, § 7, which provides:

> "All vehicles shall have the right of way over other vehicles approaching at intersecting public ways from the left, and shall give the right of way to those approaching from the right; . . . "

Inasmuch as the defendant was admittedly approaching from the left of the plaintiff, this rule would favor the plaintiff by giving him the right of way, and in event the jury concluded that both vehicles were approaching the intersection at approximately the same time, the defendant would still be subject to the presumption of negligence because of failure to accord to the plaintiff such right of way.

The exception presented for consideration is the refusal to give the following requested instruction:

> "The right of way statute does not apply in this case because of the presence of the stop sign on the Gordon Road."

In elaboration, counsel for the defendant assert that the general rule was without application to the particular circumstances, and instead a special rule provided under the succeeding section of the statute, R. S., c. 29, § 8, controlled.

So far as pertinent § 8 provides:

> "For the purposes of this and the succeeding section, the state highway commission of Maine may from time to time designate certain state and state aid highways and county and town ways connecting such state and state aid highways as through ways, and may after notice revoke any such designation; . . . Every vehicle approaching on a

through way to point of its intersection with a way other than a through way so as to arrive at such point at approximately the same instant as a vehicle approaching on such other way shall as against such other vehicle have the right of way, and every vehicle immediately before entering or crossing a through way at its point of intersection with another way shall first come to a full stop, . . . No such designation of a through way shall become effective as to regulation of traffic at such a point of intersection until said commission shall have caused suitable warning signs or signals to be erected at or near such point."

The real gist of the exception is the claim that Route #5 was a through way, that a stop sign existed near the point of intersection with the Gordon road, and that this situation entitled the defendant to the special right of way rule as set forth above.

There is nothing in the record to show that Route #5 has been designated by the State Highway Commission as a through way. *Suitable* warning signs must be erected to make such designation effective as to regulation of traffic. The purpose of this statute is to give travelers on specially designated through ways the right of way over all vehicles entering or crossing such through ways. This abrogates the general rule in many instances. The requirement that suitable warning signs shall be erected, carries with it the necessary implication that the traveler be apprised that the highway is a through way. Otherwise, he would have a right to rely upon the general right of way rule. The only evidence as to the character of the warning sign here is that it was "a stop sign." It is a matter of common knowledge that stop signs are placed at intersecting streets which are not through ways, and by municipal authorities. The usual, ordinary stop sign indicates no change of the general right of way rule. The special rule applies only when the sign suitably warns of a through way intersection.

The defendant relies upon cases holding, in effect, that a stop sign is presumed to have been lawfully erected and maintained. The cases cited do not reach the situation here described. In fact, it is noted in *McMillan v. Nelson* (Fla), 5 So. (2d), 867, that:

> "It was the same character and sort of sign as those used all over the State by the State Road Department to warn of such condition and danger. . . . The sign is shown to have been so located as to give warning of danger at an intersection of which the State Road Department had jurisdiction."

While stop signs may be presumed to have been erected by proper authority, yet when it is urged that a right of way rule is abrogated and reversed because a stop sign was near the intersection of the two ways involved, it cannot be assumed without evidence that one of the ways was a through way and that the stop sign was erected under authority of the State Highway Commission.

The refusal by the presiding Justice to give the requested instruction is not exceptionable.

*Motion overruled.*
*Exception overruled.*