DWIGHT L. CROCKETT

*vs.*

FRED L. STAPLES

Androscoggin.   Opinion, June 11, 1952.

*Marguerite L. O'Roak,*
*Frank M. Coffin,* for Plaintiff.

*Desmond & Mahoney,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.   Exceptions to the direction of a verdict for the defendant are sustained.

The only issue in this tort action arising from a collision between automobiles operated by the plaintiff and the defendant is whether, as a matter of law, the plaintiff must be charged with contributory negligence. In argument the defendant abandoned, and properly so, any claim that the evidence did not present a jury question on the issue of defendant's negligence.

Under the familiar rule we must determine whether reasonable persons taking the evidence with its inferences in the light most favorable to the plaintiff could conclude that plaintiff was in the exercise of due care. A recent statement of the rule is found in *Bernstein* v. *Carmichael*, 146 Me. 446, 82 A. (2nd) 786.

From an examination of the record, including photographs, we are of the view a jury could find substantially the following situation:

The plaintiff, alone in his car, was proceeding westerly on Route #121, a "black top" highway leading from Mechanic Falls to Welchville. The defendant was proceeding southerly on the East Oxford road, known for this case at least as the "School House road," leading into and ending at the north line of Route #121. There was a stop sign on the dirt road approximately 30 feet north of the intersection.

The area with which we are concerned includes the School House road from a point some distance north of the stop sign at or near a school yard and Route #121 for a distance of at least 300 feet easterly of the intersection. Within this area the plaintiff and the defendant could at all times have observed traffic on the intersecting roads.

The cars collided within the intersection on the south half (or east bound traffic lane) of the pavement of Route

#121. The defendant entered from the left or east side of the dirt road and was in the process of turning easterly on Route #121. The front of defendant's car struck the right side of plaintiff's car. The plaintiff was dazed by the collision and lost control of his car, which "bounced off" and came to a stop 114 feet westerly after breaking a guy wire and striking two houses on the south side of the road. The defendant's car stopped 6 feet north of the south edge of the pavement.

The accident took place at approximately six o'clock, daylight saving time, on the evening of May 24, 1951. The road was damp, but this did not affect the case in any way. Visibility was good. Both the plaintiff and the defendant were thoroughly familiar with the area, the roads, the intersection, and the stop sign.

The plaintiff when at least 300 feet east of the intersection saw "a car coming down the dirt road toward the highway" at or near the schoolhouse yard north of the stop sign. "I should say," said the plaintiff, "the car came out at a slow speed with indication that it might stop." The plaintiff's speed was about 30 miles per hour. When within 50 to 100 feet of the intersection plaintiff blew his horn.

The essential facts are given in the evidence of a State Police Officer of statements by the parties:

(Plaintiff)

"I was going toward Welchville. I saw the other automobile approaching from the side road and supposed he was going to stop. When I realized he wasn't I was too close to avoid hitting him."

(Defendant)

"I was coming out onto the Mechanic Falls Road from a side road and looked both ways. I observed

a vehicle coming from my right but thought I had plenty of time to go across the road, not noticing the vehicle coming from my left until I was practically in the road. Then it was too late."

In short the plaintiff, assuming the defendant would stop before entering Route #121 and permit the plaintiff to pass safely through the intersection, paid no further attention to the defendant until it was too late to avoid the collision. Indeed whether the defendant stopped (as defendant and his wife say) or merely slowed down (as other witnesses say the defendant said) at the sign is not known to the plaintiff.

The plaintiff insists, and the defendant denies, that the plaintiff had the right of way under the through way and stop sign provisions of the statutes. *R. S., Chap. 19, Sec. 78,* as amended by *P. L., 1947, Chap. 98,* and *P. L. 1949, Chap. 146; R. S., Chap. 19, Sec. 79,* as amended by *P. L., 1949, Chap. 144.*

The argument turns upon the meaning of the 1947 amendment to section 78 which reads:

"Such signs and signals shall be prima facie evidence that said signs and signals were erected in accordance with the provisions of this section."

There is in the record no evidence of the designation of Route #121 as a through way. Under the rule of *Hill* v. *Janson,* 139 Me. 344, 31 A. (2nd) 236 decided in 1943, such evidence was required to alter the usual right of way. The 1947 amendment, however, fits the present situation precisely. For purposes of this case Route #121 was a through way (or at least a "stop intersection"), and the statutes giving the right of way to the traveler on the favored way and requiring the traveler on the other way to stop at a stop sign were applicable.

If the prima facie amendment of 1947 did not accomplish this result, it is difficult indeed to assign to it any value in the trial of cases. An amendment validating stop signs installed as of January 1, 1951 became effective after the accident, and so is not here applicable. *P. L., 1951, Chap. 292.*

The decisive inquiry is whether the plaintiff was necessarily negligent in relying upon the defendant stopping or in any event yielding the right of way to the plaintiff until it was too late to avoid the accident.

The plaintiff was not bound to anticipate defendant's negligence. He "had a right to consider that the defendant would observe the law as to stopping" . . . *Davis* v. *Simpson,* 138 Me. 137, at 145, 23 A. (2nd) 320; *Hutchins* v. *Mosher,* 146 Me. 409, 82 A. (2nd) 411; 2 *Blashfield Cyc. of Automobile Law & Practice,* Sec. 1028-1032 (Perm. Ed.)

Let us say that in the exercise of due care the plaintiff could continue at his then speed on the assumption defendant would stop at the sign. Where was the plaintiff when defendant continued beyond the stop sign? Where was he when he knew or should have known that defendant was about to enter Route #121? Was he so near the intersection that he could not avoid the collision in the exercise of due care? Should he have had his car under such control that he could have stopped before the intersection, or reduced his speed to the point that the defendant could have passed across his path in making a left turn on Route #121?

Putting the case differently, we have *first,* a period within which plaintiff could properly rely upon defendant stopping at the stop sign and yielding the right of way to the plaintiff, and *second,* a period brief indeed within which plaintiff knew, or should have known, the collision must

occur unless he stopped or in some manner altered his course. Where were the plaintiff and the defendant when the first period ended? Did the plaintiff thereafter fail, as a matter of law, to exercise due care under the circumstances?

We conclude that the question of contributory negligence was properly for the jury to answer. It is well understood that we do not thereby say what answer should be made by the finders of fact.

*Exceptions sustained.*