**Henry DUMAS**

v.

**Leo Paul LABONTE.**

**Jeannette DUMAS**

v.

**Leo Paul LABONTE.**

Supreme Judicial Court of Maine.

March 24, 1966.

T. A. Fitanides, Biddeford, for plaintiffs.

Verrill, Dana, Walker, Philbrick & Whitehouse, by John A. Mitchell, and Leon V. Walker, Portland, for defendant.

Before WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WEBBER, Justice.

The plaintiffs were awarded jury verdicts for damages in these companion cases arising from an intersection collision of two automobiles. A motion in each case for judgment for the defendant n.o.v. was denied. The issue on appeal is whether or not the plaintiff driver was guilty of contributory negligence as a matter of law.

"It is well settled that a verdict should not be ordered for the defendant by the trial Court when, taking the most favorable view of the plaintiff's evidence, including every justifiable inference, different conclusions may be fairly drawn from the evidence by different minds. Collins v. Wellman, 129 Me. 263, 151 A. 422; Young v. Chandler, 102 Me. 251, 66 A. 539." Howe v. Houde, 137 Me. 119, 15 A.2d 740; McMann v. Reliable Furniture Co., (1958) 153 Me. 383, 385, 140 A.2d 736.

A jury could have found that Mrs. Dumas, driving north on Bradbury Street in Biddeford in the early afternoon of June 7, 1963, came to a stop at a stop sign controlling traffic about to enter Main Street; that the car ahead of her moved into the intersection; that she then pulled ahead and to her right to permit a truck to make a right turn from Main Street into Bradbury Street, clearing her car on its left as the truck proceeded southerly on Bradbury Street; that she again came to full stop with the front of her car about at the curb line of Main Street from where she had an unobstructed view easterly along Main Street to its intersection with Route #1 494 feet away; that a car driven by one Means was then stopped on Main Street heading easterly and ready to enter the intersection from her left; that she received from Means a wave or other indication that she was to precede him through the intersection; that she looked to her right and saw the defendant's car just starting off "very, very slowly" at a point on Main Street estimated by one witness as about 400 feet from the intersection; that she then drove into the intersection and proceeded straight across at a speed estimated as six or seven miles per hour; that when the front of her car had cleared the intersection on the opposite side she looked again to her right and saw the defendant's car coming toward her about 50 feet away and traveling "at a high rate of speed", "at least 50 miles per hour"; that the right rear of her vehicle was struck almost immediately, pushed at least fifteen feet in a westerly direction and spun around 90° in the street. The posted speed controlling traffic pro-

ceeding on Main Street was twenty-five miles per hour. The defendant's car left brake marks extending 32 feet to the point of impact. Disinterested witnesses gave other and additional evidence tending to corroborate the plaintiff's estimate of defendant's excessive speed.

29 M.R.S.A. Sec. 949 contains the rules which governed the conduct of these drivers. The pertinent portions in effect in 1963 are as follows:

"* * *, every driver of a vehicle approaching a * * * stop intersection indicated by a stop sign shall stop, and after having stopped shall yield the right of way to any vehicle * * * which is approaching so closely on said highway *as to constitute an immediate hazard,* but said driver having so yielded may proceed *and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding."* (Emphasis ours)

It is apparent that the plaintiff as she looked to her right and observed the apparent speed of the defendant's automobile approximately 400 feet away was required in the exercise of due care to make such a reasonable judgment as a man of ordinary prudence would make as to whether or not it was approaching so closely "as to constitute an immediate hazard." If not, and she then properly committed herself to the intersection, it became the statutory duty of the defendant to yield the right of way to her. The plaintiff had to cross an intersection 44 feet and 8 inches wide. Making allowance for the normal length of a car, she could fairly assume that her vehicle would completely clear the intersection in approximately 6 or 7 seconds. Traveling within the posted limit, the defendant would require at least 10 or 11 seconds to arrive at the intersection. Although one situated as was this plaintiff is not expected or required *to make mathematical computations* before entering an intersection, such computations made from the advantageous position of hindsight will often shed light on

the reasonableness of the split second decision which was in fact made. The plaintiff here when she elected to proceed could fairly assume that she could entirely vacate the intersection while the defendant was still many feet away.

In Hill v. Janson, (1943) 139 Me. 344, 346, 31 A.2d 236, 237, the court said: "According to credible testimony, however, the truck was then 160 feet from him (the plaintiff), and he had but to cross to the right side of a comparatively narrow highway. It was *a jury question* as to whether the plaintiff had reasonable opportunity to pass without peril or danger to either traveler, and assuming the exercise of reasonable care on the part of the other. The distance of the approaching vehicle from the intersecting point, and its speed are among the elements for consideration. *A driver is not compelled to wait for a vehicle too far away to reach the intersection until he has crossed."* (Emphasis ours)

The plaintiff here had a right to assume that the defendant would obey the law governing speed and the statutory rule above quoted governing the right of way at stop sign intersections, at least until the contrary appeared. Keller v. Banks, (1931) 130 Me. 397, 402, 156 A. 817; McMann v. Reliable Furniture Co., supra; Crockett v. Staples, (1952) 148 Me. 55, 59, 89 A.2d 737. If the plaintiff, acting on such an assumption when the defendant was too far away to "constitute an immediate hazard", committed herself to the intersection, she could not be deprived of her statutory right of way merely because the defendant's car subsequently became a hazard because of its reckless and excessive speed. We cannot say as a matter of law that the plaintiff driver was guilty of contributory negligence when she elected to enter the intersection— that was a jury question under the circumstances presented here.

But it is contended that in any event the plaintiff was negligent as a matter of law as she traversed the intersection in not

looking again and seeing the defendant near at hand. In Crockett v. Staples, supra, we recognized that in such a situation there is first a period during which the plaintiff may proceed in proper reliance that the defendant will obey the law, "and second, a period brief indeed within which plaintiff knew, or should have known, the collision must occur unless he stopped or in some manner altered his course. Where were the plaintiff and the defendant when the first period ended? Did the plaintiff thereafter fail, as a matter of law, to exercise due care under the circumstances?" In Crockett we concluded these were jury questions. So do we here on the facts of the instant case. As the plaintiff crossed the intersection she had to be sure that she had not misunderstood the apparent yielding of the right of way by the driver of the car on her left, and that there was no forward motion of that car. She had to reckon with the danger that another car, momentarily concealed by the car on her left, might suddenly appear and seek to enter the intersection. She had to make certain that the street and crosswalk directly in front of her were free of traffic, vehicular or pedestrian, which might impede her safe departure out of the intersection area. Vigilance required that her attention be so directed as to encompass all possible sources of danger. She did in fact look again to the right when the front of her car had cleared the intersection. It was *for a jury to say* whether or not she was required in the exercise of due care to make her second observation to the right sooner than she did, and if so, whether there was at that stage any course of action which would have enabled her to avoid collision.

We distinguish cases in which one entering an intersection failed either to look or to see a car approaching from his right which on the basis of undisputed testimony or uncontrovertible physical evidence must have been plainly visible and so near at hand as to present an immediate danger. Such cases are Herson v. Charlton, (1955) 151 Me. 161, 116 A.2d 632; Gregware v. Poliquin, (1937) 135 Me. 139, 190 A. 811; Dansky v. Kotimaki, (1925) 125 Me. 72, 130 A. 871; and Morrissette v. Cyr, (1959) 154 Me. 388, 148 A.2d 704.

We conclude that the issues tendered were properly for the jury and were settled by the verdicts rendered.

Appeals denied.

WILLIAMSON, C. J., did not sit.