**Alfred W. WATERMAN, Jr.,
Rebecca L. Waterman**

v.

**Frank DeFREITAS.**

Supreme Judicial Court of Maine.

Nov. 29, 1971.

———◆———

Ranger, McTeague & Lord by Orville T. Ranger, Brunswick, Mahoney, Desmond, Robinson & Mahoney by Lawrence P. Mahoney, Portland, for plaintiffs.

Norman S. Reef, Daniel W. Mooers, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

The Defendant has appealed from judgments entered in the Superior Court upon jury verdicts in favor of the Plaintiff, Mrs. Waterman, for property damage and personal injuries suffered by her as a result of a collision between her automobile and Defendant's tractor and in favor of her husband for consequential damages. The jury also denied Defendant's counterclaim and found that no negligence on the part of Mrs. Waterman had contributed to the collision.

This case raises two issues on appeal.

The Defendant first contends that this Court should find as a matter of law that there existed contributory negligence on the part of the Plaintiff and that the fact that the jury did not so conclude required an order for a new trial.

Since it has long been the rule in this state that the Law Court will not set aside a jury verdict if there is any reasonable evidence to substantiate that decision (Emery v. Fisher, 128 Me. 453, 457, 148 A. 677 (1930) ), we must examine the record for credible evidence which the jury could properly have accepted and from which it could have found the Plaintiff, Mrs. Waterman, free from contributory negligence.

The jury could have found the facts to have been as follows:

As the Plaintiff approached the scene of the accident she was driving on the eastbound lane of Interstate 95, a divided highway. At the same moment, the Defendant was driving toward the scene on the westbound road which was separated from the eastbound road by a wooded dividing area. When the Plaintiff came over the crest of a hill approaching the area of impact she looked down upon sixteen hundred feet of unobstructed eastbound highway extending to the point of collision and also a considerable distance beyond it. The eastbound road consisted of two lanes for travel and, on the right, a breakdown lane with a surface of a somewhat rougher texture. A State Highway Commission truck was stopped in the breakdown lane opposite what was to be the point of impact. At the bottom of the long descent that the Plaintiff was making the highway widened into four lanes for some six hundred feet to accommodate "turn-around" traffic which has left the westbound road for the purpose of entering the eastbound road to merge with eastbound traffic. The fourth lane is referred to as the merging lane and was at the left, as Plaintiff approached it.

As the Plaintiff descended this grade, the Defendant left the westbound highway and entered the turn-around, bearing left preparing to enter the merging lane, to cross the passing lane, the travel lane, and thence, later, the breakdown lane, in order to turn right off this highway onto the Route 1 feeder a few hundred feet further east.

The turn-around between the two highways was partially obscured from the Plaintiff's view by trees but as she continued down the hill she saw the Defendant's tractor come around the turn-around and then enter the merging lane. Plaintiff, who was returning to the travel lane after passing two trucks, slowed to and then maintained a constant speed of approximately 45–50 miles per hour. The posted legal speed in that area was 55.

As the Plaintiff approached the turn-around the Defendant crossed diagonally over the merging lane and entered the unobstructed passing lane. The jury could have found either that the Defendant then continued this diagonal course to the point of collision or that when he was part way across the passing lane he cut almost straight across into the travel lane in which the Plaintiff was driving. The Plaintiff had observed the approach of the Defendant and did not change her course until the Defendant started to enter her lane. When it did become apparent to the Plaintiff that the Defendant intended to enter the travel lane, the Plaintiff applied her brakes and swerved sharply to the left. The front of

Plaintiff's car collided with the rear of the Defendant's tractor. At the moment of impact, the front half of the Defendant's tractor had crossed the line into the travel lane.

The Defendant maintains that because the Plaintiff, aware of the approach of the Defendant, failed to take any action to avoid a possible collision, she must, as a matter of law, be charged with contributory negligence. Specifically, the Defendant argues, among other reasons, that the Plaintiff's failure to change her course of travel upon seeing the Defendant, her failure to apply her brakes when a reasonable person would have slowed down, and her failure to warn the Defendant of her approaching automobile, constituted contributory negligence. It is this Court's obligation, the Defendant insists, to find such conduct to be contributory negligence by the Plaintiff as a matter of law.

■ The determination of the existence of contributory negligence depends on the circumstances of each case and it is the jury's function to weigh the credibility of the witnesses and to review the disputed facts so as to make such a determination. Coombs v. Mackley, 127 Me. 335, 143 A. 261 (1928).

The jury found negligence on the part of the Defendant and none on the Plaintiff's part. We may not set aside this verdict "if it is possible to reconcile it with any reasonable interpretation of the evidence". Emery v. Fisher, supra.

> "Examining the issues on appeal we apply the familiar rule that the evidence must be viewed in the light which is most favorable to the Plaintiff. * * * If the evidence is conflicting the jury's verdict will not be set aside unless it is clearly wrong. * * *" Michaud v. Vahlsing, Inc., Me., 264 A.2d 539 (1970).

■ The Plaintiff contends that her inaction did not constitute contributory negligence as she was not required to anticipate the wrongdoing on the part of the Defendant. There was sufficient probative evidence adduced at trial, says the Plaintiff, to justify the jury's finding that the Plaintiff was free from negligence.

We agree with the Plaintiff as to this.

The rule as to the failure of a driver of a motor vehicle to anticipate the negligence of another driver was discussed in Crockett v. Staples, 148 Me. 55, 59, 89 A.2d 737 (1952) where this Court said:

> "The decisive inquiry is whether the plaintiff was necessarily negligent in relying upon the defendant stopping or in any event yielding the right of way to the plaintiff until it was too late, to avoid the accident.
>
> The plaintiff was not bound to anticipate defendant's negligence. He 'had a right to consider that the defendant would observe the law as to stopping' * * * *."

In *Crockett*, the Plaintiff was proceeding westerly along Route 121 and the Defendant was proceeding southerly along a highway that led into and ended at the northern lane of Route 121, at which point the Defendant faced a stop sign. Although the Plaintiff observed the Defendant approach the stop sign, he did not anticipate that the Defendant would fail to stop. The Defendant, nevertheless, did not yield the right of way and collided with the Plaintiff in the intersection.

The situation in the case at bar is not unlike that of *Crockett* in that the Plaintiff, approaching the intersection from the Defendant's right, had the right of way and the Defendant, entering the intersection from the Plaintiff's left, was required to yield that right of way. 29 M.R.S.A. § 944.[1] In both instances the Defendants failed to yield the right of way and in both instances the Plaintiffs, who had had the Defendants in clear view, suddenly became aware of an impending collision.

1. "All vehicles shall have the right of way over other vehicles approaching at intersecting public ways, except traffic circles or rotary intersections, from the left and shall give the right of way to those approaching from the right, except that

In finding that such a factual situation presented a jury question this Court in *Crockett* went on to state:

"Let us say that in the exercise of due care the plaintiff could continue at his then speed on the assumption defendant would stop at the sign. Where was the plaintiff when defendant continued beyond the stop sign? Where was he when he knew or should have known that defendant was about to enter Route #121? Was he so near the intersection that he could not avoid the collision in the exercise of due care? Should he have had his car under such control that he could have stopped before the intersection, or reduced his speed to the point that the defendant could have passed across his path in making a left turn on Route #121?

Putting the case differently, we have *first*, a period within which plaintiff could properly rely upon defendant stopping at the stop sign and yielding the right of way to the plaintiff, and *second*, a period brief indeed within which plaintiff knew, or should have known, the collision must occur unless he stopped or in some manner altered his course. Where were the plaintiff and the defendant when the first period ended? Did the plaintiff thereafter fail, as a matter of law, to exercise due care under the circumstances?

We conclude that the question of contributory negligence was properly for the jury to answer. * * *" Crockett v. Staples, *supra* at page 59, 89 A.2d at page 739.

In the present case the fourth lane, the merging lane, had been added to facilitate the gradual absorption of turn-around traffic into the northerly vehicular flow. The Defendant's movement into this lane from

the turn-around would not in itself constitute a harbinger of danger to drivers approaching in the travel lane who would expect turn-around traffic to move in the merging lane until entrance to the passing lane and from there to the travel lane could be made safely. The reasonableness of Plaintiff's conduct after first observing Defendant in the merging lane, the point at which the Plaintiff should have been aware of the Defendant's intention to continue into the travel lane in a manner which would endanger her, what opportunities to avoid a collision were then available to her and the reasonableness of the course of action which she then took were all jury questions. We cannot say that the jury erred as a matter of law in concluding that no negligence on the Plaintiff's part contributed to the cause of the accident.

The second issue raised by the Defendant on appeal concerns the Presiding Justice's instructions to the jury on the law governing negligence in an emergency situation.

The Defendant contends that the Presiding Justice erred prejudicially to the Defendant when he instructed the jury on the doctrine of emergency as the Defendant says there was no evidence presented at trial warranting such an instruction. The Defendant further argues that he seasonably objected to the instruction as given and has preserved the issue for this appeal. The Plaintiff maintains, however, that the Defendant did not object to the instruction given by the Presiding Justice and, therefore, has no standing to include this issue in his appeal.

This issue is concerned with a colloquy which took place at side bar when the Presiding Justice inquired if counsel had any objections or requested instructions. We have studied the somewhat perplexing language used by the Court and Defendant's

traffic officers stationed at such intersections may otherwise regulate traffic thereat. * * *"
The absence of proof that warning signs were erected at the entrance of

Route 95 denied the Plaintiff the benefit of an instruction on right of way at throughways. 29 M.R.S.A. §§ 948, 949.

counsel. For the purposes of this case it will be sufficient to say that we construe the Defendant's words, in the context of the entire discussion, to constitute an objection to the Justice's having instructed the jury on the doctrine of emergency and to interpret the Court's answer—as Defendant's attorney must have interpreted it—to represent an indication by the Court that the Court understood the grounds of the Defendant's objection. The Defendant complied with the requirements of M. R.C.P., Rule 51(b).

However, the Defendant takes nothing by this objection.

The Defendant contends that the evidence did not present a fact situation which could justify the use of the emergency doctrine by the jury. We disagree.

While it was undisputed that the Plaintiff was aware of the progress of the Defendant's tractor around the turn-around and into the intersection as she drove the last several hundred feet down the hill, there was disagreement among the witnesses as to the manner in which the Defendant drove while entering the passing lane.

The Defendant himself testified that he came to a stop on the line separating the merging and passing lane and was hit there.

Mr. Mills, who was travelling behind Plaintiff's car testified that the Defendant continued from the turn-around across into the travel lane "on approximately a forty-five degree angle".

Mr. Everett, whose car the Plaintiff had passed before coming down the hill, said that the tractor did not stop but continued out of the merging lane into the passing lane and "then cut almost straight across into the driving lane * * * [S]o [Plaintiff] swerved real sharply out and tried to go around in back of the farm vehicle. * * *"

The Plaintiff testified that the Defendant "was coming around the turn-around like this and he came right diagonally across." However, the broken line which she drew on the chart to illustrate the Defendant's course of travel appears to demonstrate a diagonal course across the merging lane to the center of the passing lane at which point the broken line cuts sharply into the travel lane.

The jury could have found that as the Defendant continued his diagonal course out of the turn-around, the Plaintiff was justified in expecting that he intended to yield to traffic already in the passing and travel lanes and to cross into the travel lane only when this could be done safely as he was required by law to do. The jury could have found that, after entering the passing lane diagonally, the Defendant changed his course abruptly and cut sharply toward and into the travel lane which would have brought him directly in front of the Plaintiff and which presented the Plaintiff with a situation of emergency.

It would then properly have been for the jury to evaluate the reasonableness of the course of conduct chosen by Plaintiff—that is, her sudden swerve to the left—under these conditions.

If the jury found these facts to have existed, they could properly have concluded that the Plaintiff's actions should be evaluated in the light of the emergency doctrine.

We note that the Defendant's trial objection was directed to the fact that the jury had been given instructions on the emergency doctrine and not to any claimed particular error or inadequacy in the charge as given. The issue raised by the objection was whether the state of the evidence justified the giving of the doctrine. We have found that it did. It also appears to us that the Justice's explanation of this doctrine, viewed in the context of the entire charge, fairly instructed the jury as to the elements of the rule and the conditions justifying its use.

Appeal denied.

All Justices concurring.