**Raymond E. MOORE, d/b/a Moore Oil Company**

v.

**Hancock G. FENTON.**

Supreme Judicial Court of Maine.

April 5, 1972.

---

Rudman, Rudman & Carter, by Torrey A. Sylvester, Gene Carter, Bangor, for plaintiff.

Fenton, Griffin, Chapman & Burrill, by William Feton, Bar Harbor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff has appealed from a judgment for defendant entered upon a verdict in favor of the defendant which was directed by the presiding Justice at the close of plaintiff's evidence presented during a jury trial.

■ We sustain the appeal.[1]

Plaintiff seeks recovery for damages to his oil delivery truck allegedly sustained in a collision with an automobile operated by the defendant.

I

When the presiding Justice directed the verdict for defendant he gave as the basic reason:

"There is no evidence in this case of any negligence of the defendant, I haven't seen any—not one word."

■ In the assessment of the correctness of this approach by the presiding Justice we commence with the familiar principle applicable generally to the evaluation of the validity of a directed verdict. We consider the evidence, whenever reasonably possible, in the light most favorably in support of the position of the party against whom the verdict was directed—in the present instance, the plaintiff.

On this basis, there is direct evidence sufficient to warrant the following conclusions of fact.

■ On December 23, 1963 plaintiff, by his duly authorized employee [2] at approximately 1:30 in the afternoon, was operating his 1956 Ford oil delivery truck, fully loaded with approximately 1500 gallons of oil, and weighing nine tons. He was proceeding in a southerly direction on Main Street (Route 3) (Main Street running generally northerly and southerly) at the outskirts of Bar Harbor, Maine. As he approached a right angle intersection of

1. In light of this decision which might now necessitate a second trial, we offer a cautionary statement of the general policy which should be followed before a verdict is directed.

   Although under Rule 50(a) M.R.C.P. a defendant has a right to move for a directed verdict at the close of the evidence offered by plaintiff, as well as at the close of all the evidence, and the Court has authority to grant such motion, the presiding Justice should direct a verdict only sparingly, as the exception rather than the rule. Only if the correctness of directing a verdict appears so clear to the presiding Justice that all reasonable doubts of possible error or uncertainty have been removed in his mind should he grant it.

   This policy allows opportunity for the benefits which can be derived from having a jury verdict. First, the jury itself might resolve the problem by returning a verdict in favor of the party who sought the directed verdict. Second, should the verdict of the jury be for the opposite party, the presiding Justice still has available the right to nullify it by judgment n. o. v.; and the Law Court, should it reach a conclusion that the verdict is properly sustainable, has opportunity to order judgment to be entered upon the jury verdict, thereby to avoid the need for a second trial to produce a jury verdict.

2. Hereinafter, because of the allowable finding that there existed an employment relationship and the employee was acting within the scope of his employment, all conduct of the employee of the plaintiff will be described as the conduct of the plaintiff, since the law so treats it.

Main Street with another street, known easterly of Main Street as Livingston Road and westerly as Park Street, an automobile operated by the defendant was approaching on Livingston Road, converging on the intersection from plaintiff's left and proceeding in a westerly direction.[3] A stop sign regulated the traffic entering the intersection from Livingston Road.[4] Plaintiff knew that Livingston Road traffic was controlled by a stop sign.

The two vehicles collided in the intersection at a place at which plaintiff's oil truck was situated in its own right lane. The area of impact between the two vehicles was at the middle of the intersection, but the cab portion of plaintiff's oil truck had gone beyond the middle of the intersection into the southwesterly quadrant. The automobile operated by defendant struck against the oil truck, broadside, on the left hand side of the truck just behind the cab. The impact caused the rear wheels to come off the truck and its brakes to be lost.

The truck went out of control and "skided along" heading in a southwesterly direction along Main Street until it struck a glancing blow against a tree (situated in an area on Main Street southwesterly of the intersection) and came to a stop aside the tree approximately 105 feet from the place of original impact. The oil truck was extensively damaged on its left side behind the cab toward the rear.

The automobile operated by the defendant came to a stop after the impact on Main Street in the southeasterly quadrant of the intersection and facing in a southeasterly direction. It was extensively damaged on its right front and right front-side areas.

The weather was clear and the streets were dry and bare of any accumulations of snow or ice. Main Street was basically level in the general area here involved. During the course of a "short distance" along Main Street, as plaintiff had passed one prior intersecting street and was proceeding toward the intersection with Livingston Road, plaintiff had first slowed down (in the vicinity of the prior street, as he followed another vehicle which had slowed to make a turn off Main Street) and had shifted into second gear. As he then proceeded along Main Street he was in the process of shifting through the balance of the truck's five gears, but the evidence fails to disclose which gear plaintiff had actually attained as he came to the intersection and entered it.

3. Regardless of whether the testimony of witnesses authorizes this conclusion, the complaint of the plaintiff made the following allegations:

\* \* \* \* \*

"3. On or about December 23, 1963, in Bar Harbor, Hancock County, Maine, the Defendant was operating a certain motor vehicle in a westerly direction on Livingston Road at the intersection of Livingston Road and Main Street.

"4. Durwood Coffin, Plaintiff's employee, was *at the same time* operating a motor vehicle in a southerly direction along Main Street." (emphasis supplied)

These allegations were expressly admitted by Paragraphs 3 and 4 of the Answer of the Defendant. Furthermore, defendant expressly made the same allegations in his own Counterclaim and they were explicitly admitted in Plaintiff's reply to the Counterclaim.

Thus, it is clear that the pleadings had eliminated from the case all questions concerning the facts that defendant was operating his motor vehicle on Livingston Road and was converging on the intersection with Main Street at or about the time plaintiff proceeding on Main Street was approaching the intersection. These facts were, in this manner, established on a basis equivalent to stipulated admissions. Benner v. Lunt, 126 Me. 167, 136 A. 814 (1927); Jeffery v. Sheehan, 135 Me. 246, 194 A. 543 (1937).

4. While there is no evidence of whether the stop sign was erected with authority thereby to be legally effective, the case was tried on this basis. Furthermore, and in any event, under R.S.1954, Chapter 22 § 88, as amended by P.L.1959, Chapter 125 and Chapter 363 § 13 (now 29 M.R.S.A. § 948), and the decision in Crockett v. Staples, 148 Me. 55, 89 A.2d 737 (1952) and Tinker v. Trevett, 155 Me. 426, 156 A.2d 233 (1959), the existence of the sign was "prima facie" evidence that it was legally authorized and, therefore, of valid legal effect.

From these facts shown directly by the evidence, and with the evidence considered most favorably for the benefit of plaintiff, the following additional conclusions of fact could properly have been inferred by a jury.

Drawing legitimate inferences from the foregoing circumstances as to (1) the place in the intersection at which impact occurred, (2) the area and extent of damage to the vehicles, (3) the course of the plaintiff's oil truck after impact, (4) the spots at which both vehicles ultimately had come to rest after impact, (5) the directions in which they were then facing, and including the direct testimony of the plaintiff regarding what he knew and saw immediately before impact had occurred, a rational jury could justifiably conclude that (a) plaintiff, knowing of his legal right of way, was the first to commit his motor vehicle to enter the intersection and did, in fact, first enter the intersection at a speed which was reasonable and moderate, generally, for entering into an intersection; (b) the speed of the automobile operated by defendant was too rapid at the time of impact to be consistent with the fact that defendant had made a complete stop at the stop sign and had then started from a dead stop into the intersection; (c) therefore, and even though plaintiff had already first entered the intersection and was in the process of proceeding through it, defendant went through the stop sign without stopping, thereby violating a statutory rule of the road; and (d) as a result, defendant ran into the vehicle of plaintiff striking it broadside and largely in the middle and rear area of the side while plaintiff's vehicle was in its own right lane and when at least the front part of plaintiff's vehicle had already achieved a place more than half way across the intersection.

With the evidence authorizing the foregoing conclusions of fact, the presiding Justice erred in directing a verdict for defendant on the ground that the evidence failed entirely to show negligence of the defendant. Especially since a violation by defendant of a statutory rule of the road was sufficiently indicated, the evidence was surely adequate to raise jury issues regarding the proximate causational negligence of the defendant.

## II

In the course of his remarks explaining his reasons for directing a verdict for defendant, the presiding Justice added a comment.

". . . of course, your man [plaintiff] says he never saw anything."

This statement was the presiding Justice's reaction to the testimony of plaintiff's employee, Durwood G. Coffin, who was operating the oil delivery truck.

The testimony of Mr. Coffin was as follows:

"Q  Would you describe to the Court then what happened as you approached this intersection?

"A  Well, I approached it normally; I didn't see anything until I see a car out of the corner of my eye right here.

"Q  What called your attention to that, if you recall?

"A  I don't know, I just happened to see it, that's all.

"Q  How far away was this vehicle when you first saw it?

"A  Well, a matter of five or six feet— I mean, there was nothing I could do.

"Q  Which side was it?

"A  On the driver's side.

"Q  That would be the left hand side of your truck?

"A  Yes."

    *    *    *    *    *    *

"Q  Now, as you approached this intersection, did you see any vehicles ap-

proaching, or in the intersection, either from your right or your left, or straight ahead?

"A No, I didn't.

"Q Would it be a fair thing to say then that the intersection was clear as you approached it?

"A I don't know, I wouldn't say one way or the other.

"Q But as far as you can recall, you didn't see any vehicles in the intersection as you approached it?

"A I did not."

\*   \*   \*   \*   \*   \*

"Q And how far away, again, was the car when you first saw it?

"A Oh, four or five feet. I thought it was going to end up in my lap."

In view of this testimony, the comment of the presiding Justice—that plaintiff "says he never saw anything"—can meaningfully suggest a possibly valid basis for a directed verdict in favor of defendant only if it is interpreted to signify that the operator of the oil delivery truck must be held guilty of contributory negligence as a matter of law because the evidence requires, as the sole rational alternative, the conclusion that plaintiff had *failed* to see defendant's vehicle on Livingston Road, as *something which was obviously to be seen,* at an *earlier* time than plaintiff in fact saw it.

In his argument before this Court defendant assigns such interpretation to the remark of the presiding Justice. He further adverts to the testimony of Mr. Coffin on cross-examination as follows:

"Q You weren't looking into Livingston Road, were you?

"A No.

"Q You were looking straight down the highway?

"A Well, just as you would generally drive, I mean."

Defendant maintains that this testimony discloses, as the reason for Mr. Coffin's failure to see defendant's automobile much earlier, that plaintiff had not looked but was watching only straight ahead and was thereby relying solely upon his peripheral vision.

■ Thus armed, defendant contends that the directed verdict in his favor was legally proper on the principle that plaintiff has the ultimate burden of proof to establish his freedom from contributory negligence.[5]

When, as here, a directed verdict against the plaintiff as the party having the ultimate burden of proof is asserted to be proper because the evidence must be said to have settled the issue of contributory negligence "as a matter of law" adversely to the plaintiff, there is a semantic ambiguity likely to cause confusion in analysis unless the ambiguity is exposed and clarified.

In one sense the above words can mean that plaintiff must be denied the right to go to the jury on the issue of contributory negligence because the Court has concluded that there is a *failure* of evidence on the issue. In this aspect the evidence is deemed insufficient to permit a rational conclusion by a reasonable factfinder as to the *existence* of such circumstances—including the conduct (acts of commission or omission) of plaintiff at significant times—as are critical, or material, to a rational judgment concerning plaintiff's due care (or lack of

---

5. This case, in which trial was held on December 28, 1970, was tried by the parties in the posture that it was governed by the common law doctrine that any contributory negligence of plaintiff would bar his recovery (rather than the statutory modification establishing comparative causational negligence) because, regardless of the time of the trial, the events generating the alleged cause of action had occurred prior to the statute. See: Scammon v. City of Saco, Me., 247 A.2d 108 (1968). We treat the case, therefore, as controlled by the common law of contributory negligence.

due care) and its proximate causal relationship to the injury and damages claimed by plaintiff.

In a second sense of the words, however, the directed verdict is regarded as warranted not because of a lack of evidence but rather because of the *presence* of evidence and because, in a *positive* sense, the evidence proves the circumstances, including the acts or omissions to act of plaintiff in proximate causal relationship to plaintiff's injury and damages, *with such overwhelming cogency that the only rational conclusion open to a reasonable factfinder is that plaintiff must be held guilty of contributory negligence.*

As will now be discussed, in the present situation the directed verdict in favor of defendant is incapable of justification whichever meaning be attributed to defendant's contention that the evidence has settled the issue of contributory negligence against the plaintiff "as a matter of law."

### II–A

Here, although the presiding Justice seemed to intimate, and counsel for defendant has argued strenuously in favor of, the proposition that the evidence *positively* shows circumstances which establish *beyond potentiality of reasonable disagreement by rational persons* (and, therefore, as "a matter of law"), conduct of the plaintiff (either acts or omissions to act), and effects of such conduct in terms of proximate causation, constituting contributory negligence, this position is untenable.

First, on the question of whether plaintiff had looked to see what was coming on Livingston Road before plaintiff committed himself to enter the intersection there is a question of fact for the jury. As previously indicated, there was testimony of Mr. Coffin, the employee of plaintiff who was operating plaintiff's truck, which bore upon this point, as follows:

"Q Now, as you approached this intersection, did you see any vehicles approaching, *or in the intersection either from your right or your left,* or straight ahead?

"A No, I didn't." (Emphasis supplied.)

The question is so worded that the negative answer conveys an implication (especially when, as is here requisite, the evidence is taken most favorably for the plaintiff) that Mr. Coffin *had first looked* to his left (into Livingston Road) before he entered the intersection and having thus looked, saw nothing.

Furthermore, defendant gains nothing to warrant the conclusion that the evidence inexorably establishes Mr. Coffin's failure to look from the following testimony of Mr. Coffin on cross-examination:

"Q And did that laundry truck obstruct your view into Livingston Road in any way?

"A I didn't notice—I mean, there was no reason for that to be, I had the straight away.

"Q You weren't looking into Livingston Road, were you?

"A. No.

"Q You were looking straight down the highway?

"A Well, just as you would generally drive, I mean."

This testimony cannot be deemed, even if taken within its own confines at face value, to establish that Mr. Coffin had *never* looked into Livingston Road as he approached its intersection with Main Street, in contradistinction to whether he had been looking at a specific moment of time—i. e., as he became involved with the laundry truck. In addition, the qualification, "just as you would generally drive", raises similar doubts concerning the specific time under consideration. Finally, and in any event it was a jury matter to evaluate the fair implications of Mr. Coffin's testimony on direct examination in relation to his testimony on cross-examination.

Not only was it a legitimate issue of fact whether Mr. Coffin had looked into Livingston Road at some time prior to entering the intersection but also the evidence leaves for jury determination whether, if he had looked and seen nothing, Mr. Coffin, *as a reasonable person, should have seen* defendant's automobile before it reached the intersection because it was in fact there at that time and *obviously* visible.

The evidence discloses that on Mr. Coffin's left side (the easterly side of Main Street) as he was approaching the intersection of Livingston Road with Main Street, and in the area stated to be the "northeasterly corner" in relation to the intersection, there was situated a motel structure, the "Cadillac Motel"; and a truck, variously described as a laundry or dry cleaning truck, was parked on Mr. Coffin's left side of Main Street in front of the Cadillac Motel.

The placement of the Cadillac Motel and the laundry truck at the *northeasterly quadrant* in relation to the intersection is sufficient to indicate some obstruction to visibility and, therefore, immediately raises factual issues as to the extent and angle of visibility impairment. It cannot be said that the evidence shows the visibility from Main Street into Livingston Road to have been so clear, and without obstruction, to the plaintiff, (operating, as a reasonable driver, southerly on Main Street) that plaintiff must be held negligent, as a matter of law, had he failed to see the motor vehicle approaching on Livingston Road when it was at, and continuing from, a reasonably substantial distance easterly of the entrance of the intersection.

Furthermore, the testimony of Mr. Coffin in direct examination on the question of impairment of visibility cannot be said to clinch the issue as a matter of law. His testimony was:

"Q What sort of visibility did you have going down Main Street?

"A It was *a straight-away*, so I would say good, yes.

"Q Was there anything obstructing your view, as best you can recall, at that time, either onto Park Street or onto Livingston . . . [Road]?

"A No, *my lane was clear*; I could see." (Emphasis supplied.)

This testimony is manifestly unclear in its import. The reference in the answers to "straight-away" and "my lane was clear" tend strongly to suggest that the witness understood the scope of the question to relate to his visibility *straight ahead as confined to Main Street* rather than to include also the lateral visibility easterly into Livingston Road. At least, there was sufficient ambiguity to allow a jury to evaluate what Mr. Coffin meant.

The foregoing discussion reveals that it is inaccurate to contend, as does defendant, that the evidence establishes beyond potentiality of reasonable disagreement by rational minds that, *affirmatively*, (1) the visibility from Main Street into Livingston Road was unobstructed to the degree that a motor vehicle operating westerly along Livingston Road was obviously to be seen a substantial distance easterly of the stop sign and intersection (on the theory that the Cadillac Motel and the truck parked in its vicinity were *indubitably* without obstructive effect upon the visibility from Main Street); and (2) therefore, the operator of plaintiff's oil delivery truck must be held, *as a matter of law*, either to have (a) looked without seeing what was there and obviously to be seen, or (b) entirely omitted to look and, therefore, failed to see what was there and obviously to be seen. In this aspect of the issue of contributory negligence, defendant cannot prevail by his contention that the evidence establishes *affirmatively* the existence of conduct by the defendant which rationally must be characterized as negligent as a matter of law.

Moreover, even were the evidence to be considered to establish as a matter of law that the automobile operated by defendant was obviously to be seen for a substantial distance as it approached along Livingston

Road to the intersection and that Mr. Coffin, failed to see it, it cannot be said, further, that the evidence proves, affirmatively, that such negligence of plaintiff was, *as a matter of law*, contributory—i. e., a proximately causational factor in the collision. As stated in Goldstein v. Sklar, Me., 216 A.2d 298 (1966), referring to the analogous case of Tinker v. Trevett, 155 Me. 426, 156 A.2d 233 (1959), this issue as to proximate causation is crystallized into the inquiry:

"When should the plaintiff . . . as an ordinary reasonable person in the exercise of due care have had knowledge that the . . . [defendant's] vehicle in all probability would not observe the law, would negligently go through the stop sign without stopping and fail to yield the statutory right of way?" (216 A.2d pp. 300–301)

In the present situation the answer as to alleged proximate causation as a matter of law must be, as it was in *Tinker*, supra, and as it was expressed in Goldstein v. Sklar:

"From the evidence . . ., we cannot say as a matter of law that such knowledge should have come to the plaintiff before he was committed to entering the intersection and at a time when it was not too late to avoid the collision." (216 A.2d p. 301)

The reason is that the evidence is insufficient to show so clearly (if at all) that only one rational conclusion is possible either that (1) there was something about the manner in which defendant was operating his motor vehicle that must have suggested a likelihood, to a reasonable observer, that defendant would negligently go through the stop sign without stopping and fail to yield the right of way, or (2) plaintiff, as a reasonable person exercising due care, must necessarily have had knowledge of such circumstances in sufficient time to take reasonable steps to avoid the collision. The totality of the evidence, insofar as it has any affirmative tendency on these issues, manifestly fails to resolve them beyond potentiality of reasonable disagreement by rational minds. The matters should have been left, therefore, for jury consideration and decision.

Thus, there is no basis in the present case to support a directed verdict on the theory that the evidence proved *affirmatively* that plaintiff had acted in a manner such that rational minds could arrive at only the one conclusion—and, hence, as a matter of law —that plaintiff's conduct and its effects constituted contributory negligence.

### II–B

If, therefore, the directed verdict is to be justified, it can be only on the theory that plaintiff, insofar as he has the ultimate burden of proof to establish his freedom from contributory negligence, *failed to produce sufficient evidence* to meet this responsibility.

This purported justification of the directed verdict for defendant must, however, be rejected.

When the evidence is considered most strongly to support plaintiff's claim, the evidence is sufficient, as was said in Goldstein v. Sklar, supra:

". . . to indicate that the plaintiff's . . . [truck], of the two vehicles converging upon the intersection, entered it first and thus confirm[s] objectively the plaintiff's right of way in fact as well as in law." (216 A.2d p. 300)

At this juncture, there becomes relevant the principle of Maine law that the benefits of the existence of a legal right of way are conferred not absolutely but are enjoyed in relation to the correlative generalized doctrine that reasonable care must be exercised in particular and appropriate attendant circumstances. Davis v. Simpson, 138 Me. 137, 23 A.2d 320 (1941).

The specific problem which the present case crystallizes for resolution pertains to the operation of the foregoing principles in

a situation in which plaintiff bears the ultimate burden of proof to establish his freedom from contributory negligence. Specifically, the issue is: how does plaintiff discharge this burden in relation to facts adequately establishing the existence of an underlying legal right of way in favor of plaintiff which plaintiff, preliminarily at least, has the right to exercise in fact until it can be held that it has been forfeited, abrogated or terminated by the supervention of additional particular circumstances?

■ In Davis v. Simpson, supra, and Crockett v. Staples, 148 Me. 55, 89 A.2d 737 (1952)—(both of which were cases involving situations in which the existence of a stop sign conferred upon the plaintiff a right of way in law and thus the initial and preliminary benefits to plaintiff to exercise it in fact)—this Court established that, consistently with the generalized duty that he exercise due care for his own safety, one who has the legal right of way has the right to exercise it in fact by operating his motor vehicle without being continuingly on guard to anticipate that other drivers will violate the law, or otherwise operate negligently, in relation to the legal right of way.[6]

Rather, as was made clear in Davis v. Simpson, supra, the plaintiff having the legal right of way,—as a generalized principle (in the exact language of Davis v. Simpson itself, "at all events"),—may drive with a degree of faith. He may exercise his legal right of way in fact on the *affirmative assumption and reliance* that there will be an *absence* of any violation of law or negligent conduct by other persons in contravention of the legal right of way. This remains his right until circumstances develop which show the assumption to be unwarranted.

Within the last six years, this fundamental proposition was reaffirmed in a most cogent manner in Goldstein v. Sklar, supra, in which, even though there was an entire absence of any

"positive evidence as to what the plaintiff operator was doing and where he was looking at the time of the accident, . . ." (216 A.2d p. 300)

or at reasonable times prior to the time of the accident, this Court said that plaintiff, nevertheless,

"had a right to consider that the defendant would observe the law as to stopping"

and further

". . . plaintiff's right to assume that . . . [defendant] would observe the law and refrain from negligently operating his automobile through the stop sign, would legally persist *until the contrary appeared*." (216 A.2d p. 300)

■ The amplified discussion in Goldstein v. Sklar, supra, especially insofar as it focused upon Tinker v. Trevett, supra, clarifies the meaning of "legally persist until the contrary appeared"—as used in Davis v. Simpson, as well as in Goldstein v. Sklar,

6. "Defensive" driving methods which are being widely heralded today and which suggest that the operator of a motor vehicle should be on guard at all times to expect anything from any other operator are surely laudable in their objective to prevent all highway "accidents"—without regard to fault.

We stress, however, that the legal principles now being considered are concerned with the delineation of criteria (1) bearing upon such *legal fault* as will justify a remedy in the form of an award of monetary damages for a collision which has already occurred and (2) in further relation to the allocation of the responsibility for reproducing the circumstances of the collision in a courtroom before a fact-finder who is to make the ultimate judgment.

The differences in purpose may well justify differences in approach and principle. Hence, what may be desirable as "defensive" driving aimed at eliminating highway "accidents", generally, may be inappropriate to be carried over, automatically, to control in relation to the proof of legal liability as the foundation for the remedy of money compensation for the damages caused by a highway collision.

itself. It is that the right *affirmatively to assume* the *absence* of conduct by other persons in violation of law and derogation of plaintiff's right of way persists and continues until there appears in evidence a showing, affirmatively, that circumstances had arisen which would make an ordinarily prudent person in the position of plaintiff *aware* of the probability that defendant will enter the intersection without first stopping at the stop sign, and, further that this knowledge would be achieved in *sufficient time* for reasonable action to be taken to avoid the collision. *Absent* an evidentiary showing of such supervening facts, the plaintiff's *right to rely* on the *assumption* that defendant will honor the stop sign and yield to plaintiff remains continuingly operative.

Indeed, were this not so, we should be extending, or enlarging, to a degree which is unfair, excessive and beyond the dictates of ordinary experience to guide the allocation of the responsibility for the reconstruction of events as an incident of the administration of justice, the strictures of plaintiff's ultimate burden of proof to establish his freedom from contributory negligence—a burden already sufficiently difficult insofar as it requires plaintiff generally to prove matters essentially negative in scope. See: Goldstein v. Sklar, supra, (216 A.2d at p. 301) citing appropriate language from Guthrie v. Maine Central Railroad Company, 81 Me. 572, 580, 18 A. 295, 296 (1889).

It is unreasonable to demand,—(as a particular application of plaintiff's ultimate burden of proof as to contributory negligence, and in the face of evidence which adequately proves a pre-existing legal right of way as an incident of which plaintiff enjoys a pre-existent underlying and prima facie continuing right affirmatively to assume that the operator of a motor vehicle approaching the stop sign will respect it and yield to plaintiff's right of way)—that there must appear in the evidence, to allow plaintiff to go to the jury on the issue of contributory negligence, *additional* and

*positive* proof of *more negatives*: what had *not* happened,—i. e., the *non-existence* or the *non-occurrence* of those concrete circumstances which, were they to exist or to have happened, might tend to show that when plaintiff committed himself to enter the intersection, there had been a termination of his initial pre-existing and generally continuing right to assume that defendant would act *in fact* as he was obliged to act *by law.*

■ We decide, therefore, that once, as here, plaintiff has produced evidence (1) sufficiently indicative of defendant's causative negligence and also (2) sufficient to warrant a jury conclusion that plaintiff knew of his legal right of way against traffic from Livingston Road and had confirmed and exercised it in fact—(insofar as at a rate of speed moderate and reasonable, generally, for entering into an intersection, plaintiff was the first to enter the intersection with Livingston Road),—plaintiff has presented adequate evidence to require submission of his case to the jury on all of the issues of the case, including the issue of his freedom from contributory negligence.

The plaintiff is carried to the jury on the issue of his own due care because the foregoing evidence is adequate to authorize the conclusion that plaintiff committed himself to enter the intersection and did first enter it in the exercise of his right, which was still continuing, to assume affirmatively that defendant would stop at the stop sign and continue to honor the legal right of way which plaintiff had confirmed in fact. By such proof that he entered the intersection in the exercise of a continuing legal right, plaintiff establishes, sufficiently to allow a jury evaluation of the matter, that he was in the exercise of due care.

Specifically, this principle is correctly applicable and operative notwithstanding that the evidence (1) tends to show that prior to committing himself to enter the intersection, and at a potentially material time, plaintiff had failed to look to see or

had looked without seeing the motor vehicle of defendant which a reasonable careful person might have seen by looking but (2) is otherwise silent, or inadequate to be capable of authorizing affirmative conclusions by a jury (a) that it was more probable than not that there existed in fact an obstruction to visibility which would probably have prevented an ordinarily careful person from being able to observe another vehicle converging on the intersection (subject to plaintiff's right of way), or (b) that it was more probable than not that there was an absence of indication of danger from such other vehicle, or, if there were some prospect of danger, that it was more probable than not that an ordinarily careful person either would have failed to be aware of it, or, if aware of it, would have been unable at such time and thereafter to take precautions which could avoid the collision.

Should the evidence be in the state above described, defendant must bear the risk that plaintiff is entitled to go to the jury—and this consistently with the co-existence of plaintiff's ultimate burden of proof to establish his freedom from contributory negligence. Furthermore, if defendant seeks to prevent the case from going to the jury, it is then his responsibility to have the evidence amplified in such manner that the evidence establishes *so cogently that there can be no reasonable disagreement by rational persons* that (1) the defendant's vehicle was clearly visible to an ordinarily careful person in the position of the plaintiff *and* (2) the probability of its going through the stop sign was likewise thus manifest *and* (3) plaintiff, as an ordinarily careful person, must have become aware of these facts at a time prior to his commitment to enter the intersection *and* (4) thus aware, as an ordinarily careful person, plaintiff must have been able to avoid the collision.

We consider this conclusion to be the undeniable import of our decision in Tinker v. Trevett, supra.

In *Tinker*, we had found it "plain" (language which signifies that no other rational conclusion was open on the evidence) that

"the defendant was in plaintiff's sight when the plaintiff's sedan was *more* than a car length north of the intersection. The vision of neither plaintiff nor defendant was obscured to the extent suggested by the plaintiff's testimony." (155 Me. p. 429, 156 A.2d p. 234) (emphasis supplied)

Insofar as the opinion discloses, the only "obscuring" suggested by plaintiff was that plaintiff had

"glanced . . . [and] she observed nothing . . .." (p. 429, 156 A.2d p. 234)

Thus, in effect, this Court in *Tinker* held that the evidence had proved, as a matter of law, that the plaintiff had failed to see (regardless of whether plaintiff had omitted to look or had looked without seeing) the truck of the defendant which was clearly visible (and which was *in fact* skidding and out of control and thus presenting an *actual* danger) when plaintiff was *at least more than a car length from the intersection.*

Notwithstanding that this set of circumstances was "plain" in the evidence, this Court in *Tinker* decided that the issue of plaintiff's contributory negligence must be for the jury because

"we cannot say as a matter of law that the fact the defendant's . . . [truck] was sliding out of control into West Broadway [i. e., into the intersection] *should have been known* to the plaintiff by observation from West Broadway . . ." (p. 429, 156 A.2d p. 234) (emphasis supplied)

prior to plaintiff's having committed herself to entering the intersection.

In explaining why this point had not been settled "as a matter of law" by the evidence, this Court emphasized:

"We may properly ask . . . what the plaintiff should have observed with reference to defendant's truck as it advanced on Lincoln Street. Where was she when she should have seen that the truck was out of control and would slide without stopping into the intersection? Was she negligent thereafter in not avoiding the collision?" (p. 429, 156 A. 2d p. 234)

We observe, and must now stress in deciding the case before us, that in *Tinker* there was no material evidence (other than that already mentioned) which can fairly be said to be *additional* to the evidence adduced in the present case and which would be of assistance to the jury in reaching the answers to the questions formulated in *Tinker* as the critical issues for jury decision.

Furthermore, the circumstances which affirmatively appeared in *Tinker* (so clearly that they were taken to be proved, in effect, as a matter of law) and which were *detrimental* to plaintiff in *Tinker*—insofar as they showed (1) fault by the plaintiff in looking and failing to see, (or not looking at all and thereby failing to see) the truck of defendant as obviously to be seen at a time which could have been critical (when plaintiff in *Tinker* was more than a car length from the entrance to the intersection) and (2) an *actual* probability that the truck of defendant would go through the stop sign because it was sliding down a grade on ice out of control—are here *absent* as similar detriments to the present plaintiff. Entirely absent is evidence showing a probability in fact that defendant would go through the stop sign; and to the extent that the present record discloses some evidence either that plaintiff had not looked at some significant time and thereby had not seen before entering the intersection (or if he had looked, and failed to see) defendant's automobile which might have been visible to plaintiff as an ordinarily prudent person, the evidence presents these circumstances as issues of fact to be ultimately decided by the jury rather than as "plain"—i. e., settled as a matter of law.

Thus, the present case is *a fortiori* from *Tinker*. Under the controlling authority of *Tinker* the issues of the case at bar, including the issue of plaintiff's contributory negligence, must be held to be for the jury to decide.

It was error for the presiding Justice to have directed a verdict in favor of the defendant.

The entry is:

Appeal sustained.

All Justices concurring.