**Vivian GOWELL**

v.

**Porter THOMPSON, Executor of the Estate of Audrey Deering.**

Supreme Judicial Court of Maine.

July 11, 1975.

Lilley & Snitger by Daniel G. Lilley, Portland, for plaintiff.

Mahoney Robinson Mahoney & Norman by Lawrence P. Mahoney, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

## ARCHIBALD, Justice.

This appeal arises from damages suffered by the plaintiff as the result of an automobile accident between an automobile driven by the plaintiff and one driven by the defendant's testatrix. After trial in the Superior Court resulting in a verdict for the plaintiff, upon an appropriate motion for judgment n. o. v. (Rule 50(b), M.R.C.P.) the Justice below set aside the verdict [1] and ordered judgment entered for the defendant. The case is brought before us on the plaintiff's appeal from this order.

Our review of the record in its entirety leads us to the conclusion that since the ruling appealed from was erroneous, we must sustain the appeal and order the case remanded to the Superior Court for reinstatement of the jury verdict.

Our conclusion is dictated by the application of certain basic tenets.

The same rule is applied to granting a motion for judgment n.o.v. as is applied to granting a motion for a directed verdict. *Mancheseter v. Dugan*, 247 A.2d 827 (Me. 1968). The party against whom a verdict is directed is entitled to every justifiable inference which the evidence in the record would reasonably support. When fair minded persons could draw different conclusions from the evidence, such party must be accorded the benefit of the most favorable view of such evidence. *MacArthur v. Dead River Company*, 312 A.2d 745 (Me.1973); *Isaacson v. Husson College*, 297 A.2d 98 (Me.1972); *Boetsch v. Rockland Jaycees*, 288 A.2d 102 (Me.1972).

Having these rules in mind, our decision must depend upon an analysis of the facts which we find in the record and which, for our purposes, we will summarize.

The accident happened at the intersection of Veranda Street and the southbound two lanes of a through way, which intersection was protected by a stop sign facing eastbound traffic on Veranda Street. As the plaintiff approached this intersection she observed another vehicle proceeding in front of her stop at the stop sign. She likewise stopped and, when the preceding vehicle had cleared the intersection, she drove to a point adjacent to the sign, stopped, looked "left, right, and left again," and observing no approaching traffic, she proceeded into the intersection, intending to cross the through way.[2] She then testified that when she was more than half way through the intersection she was suddenly struck by another vehicle, the presence of which was unknown to her until "momentarily before impact or on impact." Pressed as to whether she had heard a horn or any noise or brakes being applied prior to the impact, her answer was in the negative.

From the testimony concerning damage to the plaintiff's vehicle and the relative position of the two vehicles after the collision, the jury would have been justified in concluding that the initial point of contact was on the plaintiff's left front fender

1. In response to questionnaires the jury determined that each driver was guilty of fault, determined that the plaintiff's total damages were $6,358.15 and reduced the plaintiff's recovery to $6,040.24.

2. "Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a through way or a stop intersection indicated by a stop sign shall stop, and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard, *but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding.*" (Emphasis supplied.) 29 M.R.S.A. § 949.

with subsequent damage being caused to both the front and rear doors.

Plaintiff was cross-examined at some length on the question of visibility at this intersection. Although there was some obstruction, the record does not support a finding that the visibility was so restricted as to prohibit one from entering the intersection with safety after having stopped at the stop sign.

In summary, and viewing the testimony in the light most favorable to the plaintiff (since she was the only witness), a jury could conclude that after having stopped at the stop sign and after ascertaining the absence of any approaching traffic, she entered the intersection and had nearly completed crossing the through way when she was struck by the vehicle driven by the defendant's testatrix, who had neither given warning of her presence by blowing the horn or by attempting to apply her brakes. The jury could also have determined that the point of contact was in the left, or passing, lane of the through way, despite the fact that the defendant's testatrix would have had adequate room to circumvent the plaintiff's vehicle had she remained in her right hand lane.

The Justice below articulated his reasons for granting the motion for judgment n. o. v., holding in substance that any reasonable view of this testimony would negate negligence on the part of the defendant's testatrix. He used this language:

"To assume that in a broadside collision that the car presenting its front and strongest part to the object collided with should be completely arrested in its forward motion and hurled back by the automobile which is *broadsided is beyond a doubt physically incredible.* It is also to be borne in mind that the plaintiff's automobile was not arrested in its forward motion at any time but continued to move forward until it cleared the intersection. Under these circumstances if the car of the defendant's testatrix was still involved in the collision, it would have been dragged toward the center of the road or toward the left where it was ultimately found. *There is no rational basis for choosing between* the theories advanced by the plaintiff as showing negligence on the part of the defendant's testatrix and the contention by defense counsel that the causative negligence as far as this accident was concerned was the failure of the plaintiff to see what was there and readily to be seen . . . ." (Emphasis supplied.)

As we read this expressed rationale of the Justice below, it is apparent to us that he approached the issue having in mind certain physical laws. Given the appropriate facts and a demonstrated expertise in analyzing them, we have no doubt that valid conclusions may flow from such analysis. *Parker v. Hohman*, 250 A.2d 698 (Me.1969). However, since the record lacks the exactitudes upon which such testimony may be premised, the ultimate conclusion reached by the Justice below must fail.[3] In *Hill v. Janson*, 139 Me. 344, 347, 31 A.2d 236, 237–38 (1943), our Court dealt with the asserted contributory negligence of a plaintiff who entered an intersection after stopping at a stop sign although he, in fact, could see the defendant's vehicle approaching the intersection on the favored road. The Court said:

"It was a jury question as to whether the plaintiff had reasonable opportunity to pass without peril or danger to either traveler, and assuming the exercise of reasonable care on the part of the other.

---

3. For example, there is no evidence of the speed at which either of the vehicles were traveling. Neither are there such things as tire marks to depict the angle of the vehicles to each other at the time of collision.

The distance of the approaching vehicle from the intersecting point, and its speed are among the elements for consideration. *A driver is not compelled to wait for a vehicle too far away to reach the intersection until he has crossed . . . ."* (Emphasis supplied.)

██ The jury could well have concluded from the facts that the appellant was lawfully entitled to enter the intersection since, within the range of her visibility, she would not have been in violation of 29 M.R.S.A. § 949. Having thus lawfully entered this intersection, it was the duty of the vehicle being driven by the defendant's testatrix to yield the right of way. The jury could conclude that the failure to do so was the major contributing factor causing this accident. *See Wing v. Morse,* 300 A.2d 491 (Me.1973).

The ultimate conclusion of the Justice below is thus phrased:

"In other words, causally, the plaintiff's responsibility for this accident must be equal to or greater than that of the defendant's testatrix."

██ Mindful of the limitation on the right of a presiding Justice to substitute his judgment on the facts for that of the jury and that "a verdict by a jury on a properly submitted issue should not be set aside even where there is strong doubt of the actual occurrence or existence of a fact found by a jury,"[4] we conclude that the ruling of the Justice below was error.

The entry is:

*Appeal sustained. Remanded to the Superior Court for reinstatement of the jury verdict.*

All Justices concurring.

---

4. *Bowie v. Landry,* 150 Me. 239, 241, 108 A.2d 314, 315 (1954).