John Chase RAND and John N. Edson

v.

B. G. PRIDE REALTY and Philip J. and Cynthia H. Murdock.

Supreme Judicial Court of Maine.

Jan. 20, 1976.

Pierce, Atwood, Scribner, Allen & McKusick, by Donald W. Perkins, Albert G. Ayre, Ernest J. Babcock, Portland, for plaintiffs.

Wheeler & Pomeroy, by David C. Pomeroy, Wilson, Steinfeld, Murrell & Lane, by Thomas P. Wilson, Henry Steinfeld, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The plaintiffs initiated this action in an attempt to recover $10,000.00 which they had paid to B. G. Pride Realty, a real estate brokerage firm, as an initial payment under a contract for the purchase of real estate owned by Philip J. and Cynthia H. Murdock. As the trial progressed the issue evolved into whether the plaintiffs had made reasonable efforts to secure the financing required by this contract and a single interrogatory was presented to the jury on this issue.[1] The jury responded affirmatively to the question and the Justice presiding ordered judgments for the plaintiffs accordingly. The three defendants immediately filed motions for judgments n.o.v., which were granted, the Justice below ruling:

"After review of the evidence adduced before the jury and indulging all inferences in favor of the plaintiffs and resolving all questions of credibility in favor of the Plaintiffs, this court concludes that as a matter of law there is insufficient evidence upon which a reasonable jury could conclude that the Plaintiffs made reasonable efforts to secure the financing required by their contract."

The plaintiffs seasonably appealed from this ruling. We sustain the appeal and remand the case to the Superior Court for reinstatement of judgments for the plaintiffs.

The scope of our review is now well established, namely:

"The same rule is applied to granting a motion for judgment n.o.v. as is applied to granting a motion for a directed verdict. *Manchester v. Dugan*, 247 A.2d 827 (Me.1968). The party against whom a verdict is directed is entitled to every justifiable inference which the evidence in the record would reasonably support. When fair minded persons could draw different conclusions from the evidence, such party must be accorded the benefit of the most favorable view of such evidence. [Citations omitted.]"

*Gowell v. Thompson,* 341 A.2d 381, 382 (Me.1975); *see also Schultz v. Gould Academy,* 332 A.2d 368 (Me.1975); *George v. Guerette,* 306 A.2d 138 (Me. 1973).

Having thus delineated the scope and purpose of appellate review, we must necessarily revert to the facts.

The plaintiffs, both physicians, were owners of summer cottages in the town of Raymond located in close proximity to property owned by the Murdocks. Having been informed by John G. Shelley, an agent for B. G. Pride Realty which represented the owners, that this property was to be sold, plaintiffs negotiated through this agent for the purchase thereof. Ultimately the plaintiffs and the Murdocks signed a document entitled "Contract for Sale of Real Estate," the total purchase price being $175,000.00. The contract required payment to be made *by November 26, 1968,* in the following manner:

"$2,000.00 upon signing of this contract. $8,000.00 on or before September 7, 1968. An additional $25,000.00 in cash. And the balance of $140,000.00 by a mortgage through a local lending institution. This sale is contingent on purchasers being able to receive a mortgage of $140,000.00 on the property. However, Mr. Murdock agrees to accept a 2nd mortgage of up to $25,000.00 if necessary, and the purchasers agree to accept said mortgage of $25,000.00 to make a total of $140,-000.00. This 2nd mortgage to be at an interest of 7½% and run not more than 10 years. This financing will be arranged within 30 days."[2]

---

1. Clause 5 of the contract provided for a forfeiture of the "earnest money or deposit" on the failure of the purchasers to comply with the covenants thereof by them assumed.

2. Despite the last sentence above quoted counsel agreed that the failure of the plaintiffs to arrange the financing "within 30 days" had been waived by all defendants.

The Justice presiding construed the contract as (1) requiring the plaintiffs "to make reasonable efforts to secure the financing" specified in the contract, (2) which financing was to be "long term," and (3) "the obligation of the plaintiffs to perform their contract was not conditioned upon their being able to use the land for any particular purpose."

It is not urged on the plaintiffs' appeal nor by cross-appeal of the defendants that this construction was erroneous, and our review of the contract document accords with this interpretation.

The issue evolves into whether there was any credible evidence to support the conclusion reached by the jury that the plaintiffs had made reasonable efforts to secure the long term financing required by the contract.

The contract was executed on August 26, 1968, and within a few days thereafter the initial payment of $10,000.00 was completed. Shortly after the contract was signed, the plaintiffs and Mr. Shelley met with a Mr. Tardiff, an officer of a commercial bank in Lewiston. Plaintiffs outlined their reason for the purchase of the property which was to prevent its commercial subdivision and to operate a summer boys camp thereon, using the anticipated income to liquidate the debt incurred for the purchase of this property. They were then informed that the commercial bank "would not be interested in large, long term financing of this type," and it was suggested that the Maine Savings Bank might be an appropriate source of financing. A telephone call was then placed and a conversation was had by Mr. Tardiff with a loan officer of the Maine Savings Bank outlining the proposed plan. Plaintiffs were informed by Tardiff that although the Maine Savings Bank "considered that the value of the land was such that they would be willing to give a long term mortgage of $100,000.00 on that basis," it would be necessary for the plaintiffs to make a formal application for the loan requested, which would include personal financial statements and "a prospectus showing how [the plaintiffs] could operate a boys' camp and make it pay off this mortgage." It was then agreed that Dr. Edson, who lived in New York, would proceed to prepare the prospectus.

Having been assured by Mr. Tardiff that the anticipated loan was feasible and the agent for Pride Realty being aware of plaintiffs' intentions, Dr. Edson left for New York. Although there was no detailed record of the activities of the plaintiffs in preparation for the submission of the loan application to the Maine Savings Bank, the prospectus [3] which was ultimately sent to Byron G. Pride,[4] the principal stockholder of the B. G. Pride Realty, indicated an appreciable effort at compilation of facts demonstrating the financial feasibility of a summer boys camp. It was at Mr. Pride's suggestion that the prospectus and the financial statements of the plaintiffs were forwarded to him for his presentation to the Maine Savings Bank.

Mr Pride received the necessary statistical information shortly after November 4 and presented it to the loan officer of the Maine Savings Bank. Plaintiffs proposed to finance the purchase of the Murdock property in the following manner: $50,000.-

---

3. This prospectus contains twenty-seven pages outlining the purposes for which the proposed "Camp Wabanaki" would be operated. Included therein is a complete description of the property involved, an analysis of income and expense premised on operating an eight weeks summer ₌boys camp, with varying figures depending upon enrollment. Also included are detailed costs of such things as personnel, equipment, food, utilities and new construction. The management of the debt, including interest, was carefully catalogued. It is plainly evident that considerable effort was expended in order to bring these many facts together.

4. Mr. Shelley died prior to the submission of a formal loan application to the Maine Savings Bank.

00[5] in cash contribution by the plaintiffs (of which $10,000.00 was already paid); a bank loan of $100,000.00 secured by a first mortgage on the property; and a $25,000.00 second mortgage to Mr. Murdock in accordance with the terms of the contract.

Because the agenda for the bank meeting scheduled for November 12 was completed, this application did not receive formal consideration until November 19, at which time the bank rejected the application despite the recommended approval of the loan officer, thus leaving only one week in which to obtain the required financing.

There was evidence from which the jury could determine that prior to submitting the loan application to Maine Savings Bank other financial institutions had been contacted both in Maine and elsewhere, with the general response that the Maine Savings Bank would be the most appropriate banking source for the type of financing requested.

■ The Justice below did not make specific findings of fact which led him to conclude that there was insufficient evidence to support a finding that the plaintiffs had made reasonable efforts to secure the required financing. Therefore, we must test his conclusion by our evaluation of the facts disclosed by the record.

■■ Even though the contract was silent as to a particular purpose for which the property was to be used, it is obvious that some use was required out of which a long term mortgage could be liquidated.[6]

The jury could have determined rationally that using this property as a summer boys camp was reasonable. The real estate broker representing the Murdocks, the manager of the Lewiston bank, and the loan officer for the Maine Savings Bank, all agreed that such was an appropriate use of this property. The jury, having determined the reasonableness of the proposed use of the property, could also determine on the facts outlined herein whether the plaintiffs had acted reasonably in their efforts to comply with the financing plan specified in the contract. *See Lach v. Cahill*, 138 Conn. 418, 85 A.2d 481 (1951).

■ It is true that Maine Savings Bank, after November 26, 1968, offered to lend the plaintiffs the required sum on a one year basis which would require the commercial subdivision of this property. The plaintiffs refused this offer. Simply because the plaintiffs rejected the short term loan does not change the result because a condition precedent to the plaintiffs' obligation to consummate the purchase was obtaining a long term mortgage loan. *Luttinger v. Rosen,* 164 Conn. 45, 316 A.2d 757 (1972).

The entry is:

Appeal sustained.

Remanded to the Superior Court for reinstatement of the judgments for the plaintiffs.

POMEROY, J., did not sit.

All Justices concurring.

---

5. The plaintiffs' combined financial statements disclosed liquid assets in the form of savings accounts, securities, and cash surrender value of life insurance in the approximate sum of $75,000.00, thus disclosing their ability to generate the additional sum of $40,000.00.

6. The property comprised two hundred acres, a great deal of which was in woodland. There was a waterfront area of approximately two thousand feet. On the property was a 9-hole par 3 golf course, and a large farm building with an attached structure capable of seating eighty people. Additionally, there were eleven cabins with full utilities and adequate open areas for many outdoor activities.