Jeannette HODGDON

v.

STATE of Maine, et al.

Supreme Judicial Court of Maine.
Argued June 13, 1985.
Decided Sept. 3, 1985.

Verrill & Dana, Charles A. Harvey, Jr. (orally), Portland, for plaintiff.

Preti, Flaherty & Beliveau, Geoffrey K. Cummings (orally), Christopher D. Nyhan, Portland, for Dept. of Transp. Norman J. Rattey, Maine Dept. of Transp., Augusta, for defendant.

Curtis, Thaxter, Lipez, Stevens, Broder & Micoleau, John W. Bernotavicz (orally), Augusta, for Town of Dresden.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

The State of Maine (State) appeals from a decision by the Superior Court, Lincoln County, denying its motion for judgment notwithstanding the verdict (JNOV) after a jury trial that resulted in judgment for Hodgdon against the State. The State con-

tends that its motion for JNOV should have been granted because it is immune from suit under the Maine Tort Claims Act unless an exception is expressly provided by statute, and that no such exception exists in this case. Hodgdon also appeals, alleging that the trial court erred in allowing the jury to decide whether the Town of Dresden was obligated to repair the road and in instructing the jury that it had to find negligence by the Town before liability could be imposed. We agree with the State that it is immune from suit in this case. Because we find that the Town was not obligated by law to repair either highway relevant to this case, we conclude that any error by the trial court was harmless. We vacate the judgment entered against the State and deny Hodgdon's appeal.

## I.

On the morning of Friday, June 30, 1978, Kenneth Hodgdon was operating a motorcycle eastbound on Route 197, a rural highway in Dresden. When he reached the intersection of Routes 197 and 127, he collided with a Chevrolet Blazer driven by Eileen Alvarado. Alvarado was proceeding in the opposite direction on Route 197 with the intent of continuing southerly on Route 127. When she reached the intersection, she failed to yield to Hodgdon's motorcycle, crossed the centerline and collided with Hodgdon, killing him instantly. This intersection was Y-shaped. See Attachment A. At the point of the intersection of the two routes, Route 197 curved in a generally north and west arc. A knoll and growth of brush on the north side of this curve obstructed the view of motorists approaching each other from opposite directions.

In 1939 the State Department of Transportation (DOT), with no help from or consultation with the Town, changed the intersection of Routes 197 and 127 from a traditional T-shaped intersection to its present shape. It is unquestioned that at the time of the accident, Route 197 was a state highway and Route 127 was an improved state aid highway. The Town stated that although it knew of the defect, the State only made one suggestion that the Town use its state aid funds to fix the road. The Town also stated that, following the accident, the DOT corrected the defect without consulting the Town and the correction involved only changes to Highway 197. This problem with the intersection was also known to the State as many citizen complaints had been received by the DOT.

On May 22, 1980, Hodgdon's widow filed this wrongful death action against Alvarado (the other driver), the Town of Dresden, Lincoln County, and the State of Maine. Hodgdon settled her claim against Alvarado and the actions against Alvarado and Lincoln County were eventually dismissed. Hodgdon's complaint alleges that the intersection and its approaches "were in a defective condition as a result of the negligent design, construction, maintenance, and traffic control." Her cause of action against the State is based on 23 M.R.S.A. § 3655 (1977) alone or in conjunction with 23 M.R.S.A. § 1451 (1977).

On June 20, 1980, the State filed a motion to dismiss, asserting its immunity from this suit because none of Hodgdon's allegations fell within the exceptions to immunity set forth in the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1977). The court denied the motion on January 30, 1981, suggesting that the record should be further developed. On October 7, 1982, the State moved for summary judgment on the ground that discovery had not revealed any exception to the State's immunity that would give Hodgdon a right of action against the State. The motion was denied based on the doctrine of "law of the case". The State continued to raise the issue of immunity by motions throughout the proceedings, including a motion for a directed verdict made at the close of all the evidence, and after the verdict by a motion for JNOV, but all the motions were denied.

A trial was held in Superior Court, Lincoln County, on July 9–19, 1984. The jury found Alvarado, the driver of the other vehicle, 40% liable and the State 60% liable.

No liability was assessed against the Town of Dresden because the jury found that the Town was not "obligated to repair the highway" and was not "guilty of negligence". Damages were found to be two hundred two thousand five hundred dollars ($202,500). On August 1, 1984, the court entered judgment against the State for its share of the liability, one hundred twenty one thousand five hundred dollars ($121,500), plus thirty thousand two hundred fifty three dollars and fifty cents ($33,250.50) interest. Costs of three thousand four hundred twenty seven dollars and fifty cents ($3,427.50) were certified on September 26, 1984.

## II.

 The State argues that the trial court erred in denying its motion for JNOV because the State is immune from liability in this action under the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1977). The standard of review in determining whether the trial court erred in denying the motion for JNOV based on insufficiency of the evidence is whether the jury verdict can be sustained on any reasonable view of the evidence giving the party in whose favor the jury verdict was granted every justifiable inference. *See Zamore v. Whitten*, 395 A.2d 435, 439 (Me.1978); *Rand v. BG Pride Realty*, 350 A.2d 565, 566 (Me.1970). In this case, we find that the trial court erred as a matter of law in failing to grant the motion for JNOV. Hodgdon cites no authority, nor has our research revealed any, under which the State can be held liable in this action. Section 8103(1) of the Act provides that "except as otherwise provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." Subsection 2 of section § 8103 cites examples of governmental immunity, including in relevant part:

> J. Any defect, lack of repair or lack of sufficient railing in any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appertenances necessary for control of such ways including but not limited to street signs, traffic lights, parking meters and guardrails, except as provided in section 8104, subsection 4 and in Title 23, section 3655.

Thus, all governmental entities, which includes the State and municipalities, have complete immunity from suits on all tort claims unless they fall within the limited exceptions provided in the Act.

Section 8104(4) of 14 M.R.S.A.[1] does not apply in this case since it is limited to construction, street cleaning or repair operations. Hodgdon makes no allegation that any of these activities is involved in this case.

 Section 3655 of Title 23[2] specifically applies only to counties and towns.

---

1. 14 M.R.S.A. § 8104 (1977) states in pertinent part

 A governmental entity shall be liable for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

 4. Arising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of such ways including but not limited to street signs, traffic lights, parking meters and guardrails.

2. 23 M.R.S.A. § 3655 (1977) states in pertinent part

 Whoever receives any bodily injury or suffers damage in his property through any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge may recover from the same in a civil action, to be commenced within one year from the date of receiving such injury or suffering damages, of the county or town *obliged by law to repair the same*, if the commissioners of such county or the municipal officers or road commissioners of such town or any person authorized by any commissioner of such county or any municipal officer or road commissioner of such town to act as a substitute for either of them had 24 hours' actual notice of the defect or want of repair, but not exceeding $6,000 in case of a town. If the sufferer had notice of the condition of such way previous to the time of the injury, he cannot recover of a town unless he has previously notified one of the municipal officers of

These express statutory exceptions to the general rule of governmental immunity must be narrowly construed. *Goodine v. State,* 468 A.2d 1002, 1004 (Me.1983); *Clockedile v. State Department of Transportation,* 437 A.2d 187, 189 (Me.1981). Hodgdon argues that we should construe § 3655 alone, or in conjunction with § 1451 [3], as a waiver of the state's immunity from suit when injuries occur on highways that the State is obliged by law to repair. She argues that immunity should be waived in this case because "Maine residents" have historically had a remedy against the governmental entities responsible for maintenance of the highway for injuries or death caused by a defective highway. We find no merit in this argument. Here again, plaintiff cites no authority under which the State has been held liable under § 3655. In fact, no Maine case has held the State liable for injuries based

upon this section. Further, as indicative of the State's immunity, persons claiming injuries caused by allegedly defective State controlled highways historically have had to resort to introducing special resolves in the Maine legislature for permission to sue the State to recover for such injuries. This avenue was preserved in sec. 8105(3) of the Tort Claims Act. Indeed, it appears that Hodgdon unsuccessfully pursued this course for redress. Section 3655 clearly states that only the towns and counties, not the State, are liable for injuries caused by defects of or failure to repair highways that they are obliged by law to maintain. We view § 1451 as a very limited way of relieving the financial burden on towns and counties against which judgment has been recovered after liability has been imposed under § 3655. In no way can this section be interpreted as a waiver of the State's

---

the defective condition of such way. Any person who sustains injury or damage or some person in his behalf shall, within 180 days thereafter, notify one of the county commissioners of such county or of the municipal officers of such town by letter or otherwise, in writing, setting forth his claims for damages and specifying the nature of his injuries and the nature and location of the defect which caused such injury. If the life of any person is lost through such deficiency, his executors or administrators *may recover of such county or town liable to keep the same in repair,* in a civil action, brought for the benefit of the estate of the deceased, such sum as the jury may deem reasonable as damages, if the parties liable had said notice of the deficiency which caused the loss of life. In any action against a town for damages for loss of life permitted under this section, the claim for and award of damages, including costs, against a town and its employees shall be limited and disposed of as provided under Title 18, section 2552, but shall not exceed $300,000 for any and all claims arising out of a single occurrence. At the trial of any such action the court may, on motion of either party, order a view of the premises where the defect or want of repair is alleged when it would materially aid in a clear understanding of the case. (Emphasis added.)

**3.** 23 M.R.S.A. § 1451 (1977) states in pertinent part

The State shall be liable to towns and counties for any judgment recovered in any action

against such town or county and for reasonable attorney fees, costs and expense incurred in defending such action under sections 3655 to 3658 and 3701, but only when pertaining to those state and state aid highways to the improvement of which the State has contributed; or to which sections 802 or 1001 may apply. Within 24 hours after any of the various officials mentioned in said section 3655 first has notice of such defect or want of repair or sufficient railing, such officials shall give written notice thereof to the Commissioner of Transportation, provided that within 10 days after any of the various officials mentioned in said section 3655 first has notice of any injury to any person, such officials shall give written notice thereof to the Commissioner of Transportation and provided that the State shall not be liable for any injury sustained upon the sidewalk of any such state or state aid highway or sustained during the construction of such state or state aid highway within its limits. The State shall not be liable for any injury under this section in an amount exceeding $6,000. Any sums recoverable under section 3702, shall be deducted from the judgment against such town or county in determining the liability of the State under this section. The department may appear and take upon itself the defense of any action affecting the liability of the State under this section.

All judgments, fees, costs and expenses reimburseable to towns and counties under this section shall be a proper charge against the State Highway Maintenance Fund.

immunity from direct suit based on claims of persons injured on state or state aid highways. We decline in this case, as we have in the past with regard to other statutes, to adopt a forced construction of these sections that would extend their purpose beyond what the Legislature intended and that would be in clear contravention of the plain meaning of their terms. *See Goodine v. State*, 468 A.2d 1002, 1004 (Me. 1983); *In re Belgrade Shores, Inc.*, 359 A.2d 59, 63 (Me.1976). We, therefore, conclude that the trial court erred as a matter of law in failing to grant the State's motion for JNOV and vacate the trial court's judgment.

### III.

Hodgdon also appeals, alleging that the trial court erred in allowing the jury to decide whether the Town of Dresden was obligated to repair the road and in instructing the jury that it had to find negligence by the Town to impose liability under § 3655. We find it unnecessary to decide whether the court committed any error. We conclude that her rights were not affected because, as a matter of law, the Town could not be held liable in this case.

■ Section 3655 of Title 23 provides recovery for bodily injury and property damage against counties and towns "obliged by law to repair" the highway or town way. The responsibility for the construction, maintenance and repair of highways in this State has, through successive legislative enactments, evolved from a system where such responsibility lay mostly upon the counties and municipalities to one where such responsibility now lies mainly upon the State. The organization of the present state and improved state aid highway systems and the obligation by law to maintain such highways is set forth in Chapter 13 of Title 23. Section 751[4] of

Title 23 establishes a system of maintenance for all state and state aid highways. Section 802 of that Title states that "improved state aid highways shall be continually maintained under the direction and control of the department at the expense of the State." Section 1001 of that Title provides in relevant part that:

improved state highways shall be continually maintained, and the snow removed from such sections of designated state highways as the department may determine, under the direction and control of the department at the expense of the State.

Section 754 of 23 M.R.S.A. states that except as otherwise provided all state and state aid highways within compact or built-up sections of towns having a population of 5,000 and over, as determined by the department, shall be maintained in good repair by the town wherein the same are located at the expense of the town.

No evidence exists in the record to indicate that the intersection involved in this case was within the compact or built-up section of the town. In fact, the evidence indicates to the contrary. It is clear that under this statutory scheme the State, and not the Town of Dresden, was obliged by law to maintain both highways involved in this case. Thus, the Town of Dresden was not liable under § 3655. Since liability could not be imposed upon the Town, any error that may have been committed by the trial court in allowing the jury to decide whether the Town was obligated to repair the road or instructing the jury that the Town had to be found negligent was harmless.

### IV.

Hogdon argued at the trial level that a statutory scheme that would exclude the

---

**4.** 23 M.R.S.A. § 751 (1971) states in pertinent part:

The department shall provide a system of maintenance for all state highways to which section 1001 may apply and for all state aid highways to which sections 802 and 852 may

apply so that all sections of such highways may be effectually and economically preserved and maintained, in accordance with the best maintenance practice insofar as funds will permit.

State but not the Town of Dresden from liability would cause an unconstitutional result under both the Maine and federal constitutions. She referred specifically to article I, section 19, of the Maine Constitution which provides that every person, for an injury done him, "shall have a remedy by due course of law." On appeal, Hodgdon only tangentially raises the constitutional issue. Although she again makes reference to art. 1, sec. 19 of the Maine Constitution, her argument, restricted to less than one full page of her brief, really is that her interpretation of sections 3655 and 1451 of title 23 is consistent with the aforesaid provisions of the Maine Constitution, and any different interpretation would be inconsistent with such provisions. At no time, either in the trial court or on appeal to this court, has Hodgdon challenged the constitutionality of the Maine Tort Claims Act, now the cornerstone in this state for governmental immunity from tort liability. With the case in such a posture, we decline to address any constitutional issue.

The entry is:

Judgment vacated.

Remand to the Superior Court for entry of judgment for the State.

Appeal of Hodgdon denied.

Costs to the State.

All concurring.